# Munford *v.* Pearce.

## *Bill in Equity by Vendor, for Specific Performance.*

1. *Bill by vendor, for specific performance; offer to convey.*—The vendor of lands may maintain a bill for specific performance, to compel the purchaser to accept a conveyance; but, in such case, the bill must contain an offer to convey on payment of the purchase-money.

2. *Bill to enforce vendor's lien; offer to convey.*—In a bill to enforce a vendor's lien on land for the unpaid purchase-money, it is not necessary to aver the complainant's readiness and willingness to convey as stipulated in his bond for title, unless the bond contains a stipulation that the purchase-money shall not be due and payable until a deed of conveyance is made.

3. *What relief may be granted under general prayer.*—A bill by the vendor to compel the purchaser to accept a conveyance, being technically demurrable for the want of an offer to convey, may, under the general prayer for relief, be sustained as a bill to enforce a vendor's lien on the land.

4. *Defect in vendor's title, as defense to bill to enforce lien.*—If the purchaser knows, when he enters into the contract, that the vendor's title is defective, and that it requires a special legislative act to enable him to convey, and yet takes and holds possession under the contract, he can not set up this defect in defense of a bill to enforce the vendor's lien, after the vendor has procured the passage of such special statute.

5. *Estoppel against purchaser from setting up other title.*—If the purchaser enters under the contract, and, while thus in possession, buys in the land at an administrator's sale, at a nominal price, by agreement with all the parties in interest, for the purpose of perfecting the title, he is estopped from setting up the title thus acquired against his vendor.

6. *Parties to bill.*—When a widow contracts to sell and convey the un-

[Munford v. Pearce.]

divided interest of herself and her children in a tract of land, under authority conferred by a special statute, and puts the purchaser in possession, neither the children nor the administrator of the deceased husband are necessary parties to a bill to enforce the vendor's lien; especially where it appears that the land has been sold by the administrator, under a probate decree, for the payment of debts, and bought by the purchaser by agreement of parties.

7. *Special statutes authorizing sale of infants' property.*—The authority of the General Assembly to enact a special statute, authorizing the sale of property belonging to minors, for their benefit, may now be considered so firmly settled as to constitute a rule of property, and can not now be questioned; but, as to the validity of such laws under the constitutional provision prohibiting the enactment of special laws " in cases which are or can be provided for by a general law, or where the relief sought can be given by any court " (Art. IV, § 23), *quaere.*

APPEAL from the Chancery Court of Hale.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 1st September, 1877, by Mrs. Eleanor E. Pearce, against Thomas T. Munford, praying the specific performance of a contract, by which she agreed to sell and convey to said Munford an undivided one-seventh interest in a tract of land, particularly described. The terms of the original contract were thus stated in the bill: "In the year 1872, your oratrix made a verbal contract and agreement with one Thomas T. Munford, who now resides in Lynchburg, Virginia, which was in substance as follows: That your oratrix would sell and convey to him, the said Munford, one undivided seventh of the following described tract of land," describing it, "for and in consideration of the sum of $2,000, to be paid in cash as soon as your oratrix could make him good titles to said lands, and until such time the said $2,000 should bear interest payable annually; and in order to perfect titles, the said Munford should employ counsel, at the expense of your oratrix, to take such legal measures as he might deem necessary. Said Munford agreed to the terms of the above stated contract, and under it went into possession of said lands; and from that date, to February 4th, 1876, he paid to your oratrix all of the interest due on said sum of $2,000, and $46.16 in excess of interest. In 1873, said Munford employed Wm. E. Clarke, esq., to take such measures as were necessary to enable your oratrix to comply with her contract, and to convey good titles to said lands; and said Clarke, as attorney for said Munford, prepared a bill, which, in his opinion, would enable your oratrix to convey titles, and which, at considerable trouble and expense, your oratrix succeeded in getting passed by the General Assembly."

This special statute, entitled " An act for the relief of Augustus C. Pearce, Margaret Pearce, Eleanor Pearce, and Joseph Pearce, of the county of Marengo, Alabama," was approved April 9th, 1873, and after reciting that, "*whereas* Augustus J.

[Munford v. Pearce.]

Pearce, late of the county of Perry, departed this life, leaving heirs [him?] surviving his widow, Eleanor E. Pearce, and Augustus C. Pearce, Margaret Pearce, Eleanor Pearce, and Joseph Pearce, as his only children and heirs at law, all of whom are under fourteen years of age, and reside with their mother, the said Eleanor E., in said county of Marengo; *and whereas* the said Augustus J., at the time of his death, was seized of the following real estate, lying in the county of Hale, to-wit," describing the lands involved in this suit, "comprising all the real estate of which he died seized and possessed; *and whereas* his said children are, with their said mother, in law entitled to a homestead out of the said undivided one-seventh of said land; *and whereas* their said interest therein can not be divided and set apart to them; *and whereas* the said Augustus C., Margaret, Eleanor and Joseph, have no other means for their support, and it is to their advantage that their said interest in said land be sold, and the proceeds be applied to their maintenance and support,"—enacted as follows: *Sec.* 1. "That the said Eleanor E. Pearce, the mother of said children, be, and she is hereby, authorized and empowered to sell said interest of said Augustus C., Margaret, Eleanor and Joseph, in said real estate, in such manner, and on such terms as she may deem best." *Sec.* 2. "That on the payment of all the purchase-money for such interest so sold as aforesaid, the said Eleanor E. be, and she is hereby, authorized and empowered to convey, by a deed executed by her to such purchaser, all of the right, title and estate of the said Augustus C. Pearce, Margaret Pearce, Eleanor and Joseph Pearce, minors as aforesaid, in and to the said real estate; and such conveyance shall hereby vest such purchaser with full and complete title to the interest of the said Augustus C., Margaret, Eleanor and Joseph, as aforesaid, against all persons whatsoever claiming under, by, or through them, or either of them."—Sess. Acts 1872–3, pp. 154–5.

The bill contained the following additional allegations: "Although your oratrix had complied strictly with her part of the contract, and was, on and after April 9th, 1873, ready and willing to convey said land, said Munford did not comply with his part, and did not pay her the sum agreed on, though he still retained possession of the said lands. On the 4th February, 1876, said Munford came to Demopolis, and had a settlement with your oratrix; when she gave him credit for all he had paid her, and the contract for the sale and purchase of said lands was renewed, reduced to writing, and signed by the parties. In this renewal of the contract, however, it was agreed that, instead of the $2,000 to be paid in cash, the said Munford should give your oratrix his three promissory notes, for $666.66 each, dated February 4th, 1876, and payable on the 1st Jan-

nary, 1877, 1878, and 1879, respectively, with interest payable annually," &c.; "and said Munford then and there executed his three promissory notes, and delivered them to your oratrix, and she immediately credited the first note, by indorsement thereon, as they had agreed, with the sum of $42.16, the amount of interest overpaid her; and your oratrix then gave to said Munford a bond, in the ordinary form, to make titles to said lands on the payment of the said notes." The notes were made exhibits to the bill, and it was alleged that they were unpaid. On these allegations, the bill prayed that Munford be required, by the decree of the court, "to carry out and perform his part of said contract, as in equity and good conscience he ought to do; that an account be stated between complainant and said Munford, and a decree be rendered against him, in her favor, for the amount ascertained to be due her, and execution be ordered to issue thereon, to be levied of the goods and chattels of said Munford, exclusive of said lands;" that the lands be sold, in default of other property, and a personal decree be rendered against Munford for any balance that might remain; and for other and further relief, under the general prayer.

The defendant demurred to the bill, assigning the following (with other) grounds of demurrer: 1. That the bill fails to show that the complainant can make perfect title to the lands, and, on the contrary, shows that she can not make perfect and absolute title. 2. That it fails to allege that the complainant has performed, or offered to perform, the requirements of said alleged contract on her part, and that the defendant has refused, on demand, to perform said contract. 3. That the heirs and administrator of Augustus J. Pearce are necessary parties to the bill. 4. That the mere agreement to pay money can not be made the ground of specific performance. 5. That the complainant has an adequate remedy at law. The chancellor overruled the demurrer, and the defendant then filed an answer, in substance as follows: "Respondent admits that he did at one time negotiate with complainant, through her legal representative, for the purchase of one seventh interest in said lands; but, at the time of said negotiation, respondent was the owner of all the other interests of said real estate, and was in possession thereof, and being possessed of all the land except the interest referred to, he desired to obtain the entire interest; and being advised that the complainant and her children, who were and are now infants, without any legal guardian, were the owners of said one seventh interest, he agreed to purchase said interest from complainant, if an absolute fee-simple title to the same could be made by them. Respondent alleges that no such title can be made by the complainant, or her children, or both of them, because they were not at the time of said nego-

[Munford v. Pearce.]

tiations, and are not now, the owners of said one seventh interest. Augustus Pearce did, at the time of his death in 18—, own one seventh interest in said lands, and was a resident of Perry county at the time of his death; but he did not, and never had, resided on said lands. Letters of administration on the estate of said Augustus Pearce were granted by the Probate Court of Perry county, and said administration is still pending in said court. Said Pearce left surviving him, as his heirs at law and distributees of his estate, complainant, his widow, and several infant children, upon whose persons and estate no letters of guardianship have ever been granted. The pretended act of the General Assembly, to which reference is had, respondent is advised, is of no force or efficacy, because it was not competent for the General Assembly to authorize said complainant to sell property to which she had no vestige of title. Of all these facts with reference to complainant's and her children's title, respondent has become informed since said negotiations were had. His agreement to purchase and pay for said lands was based upon misrepresentations made to him as to the validity of said title, by complainant and those representing her; and he hereby affirms his willingness to pay any and all demands which the proper owner of said interest may have against him, but insists that it is inequitable to require him to pay for an interest in real estate, and to accept a deed therefor, when it is manifest that he obtains no title by said transaction. And respondent denies each and every allegation of said bill, except as hereby admitted," &c.

The bond for title was not produced, but a copy of it was made an exhibit to the deposition of one of complainant's witnesses, who was her attorney in the negotiations. The bond, as shown by this copy, was dated February 26, 1876, and recited that Mrs. Pearce was authorized, by the special statute above set out, to sell the interest of her children in the lands, being an undivided seventh; that Munford had been in possession of the lands since June 1st, 1872, "under and by virtue of a verbal agreement made prior to the passage of said statute, between him and the said Eleanor E., that he would purchase from her the said interest of the said minors, together with the interest of said Eleanor E. as the widow of the said Augustus J., in the said lands, and pay her therefor the sum of $2,000 whenever she had legal authority to sell and convey the same," with lawful interest, payable annually, "from said 1st June, 1872, to the time when the said purchase of said lands should be lawfully consummated;" that he had thus paid interest amounting in all to $600; "that the said Eleanor E. has, by virtue of said act of the General Assembly, sold to the said Thomas T. the said interest of the said minors, and of herself

[Munford v. Pearce.]

as widow, in said tract of land, for the sum of $2,000, for which he has executed his three promissory notes;" "in consideration whereof, the said Eleanor E. binds herself to make to the said Thomas T., his heirs and assigns, a good and lawful deed, conveying to him all the interest of the said minors and herself as aforesaid, in the said lands, so soon as he, the said Thomas T., shall pay off the said promissory notes, with the interest which may be due thereon;" and was conditioned as follows: "Now, if, on the payment of the said promissory notes, and the interest which may be due thereon, the said Eleanor E. shall, by a good and lawful deed, convey to the said Thomas T. Munford, his heirs and assigns, all of the interest in said lands of the said Augustus C., Eleanor, Margaret and Joseph, minors as aforesaid, as well as the interest therein to which she is in any way entitled, then this obligation to be void," &c.

The defendant offered in evidence, without objection, a transcript from the records of the Probate Court of Perry county, in the matter of the estate of said Augustus J. Pearce, showing that, on the 11th September, 1872, Mrs. Eleanor E., as the administratrix of the estate, filed her petition in said court, alleging a deficiency of personal assets to pay debts, and praying an order to sell, for that purpose, the interest of the estate in the lands involved in this suit, being an undivided one-seventh, the lands being in the possession of said Thomas T. Munford; that on the 1st January, 1873, after regular preliminary proceedings, the court granted an order of sale as prayed, directing the administratrix, or her successor, to sell the lands for cash, "subject to the interest of Eleanor E., the widow of said Augustus J., to dower therein, and also to the claim of the said Eleanor E. and her said children to the homestead exempt from execution, levy and sale;" that the sale was made on the 17th February, 1873, by Knox Lee, as the administrator *de bonis non* of the estate, who reported to the court that S. T. Munford had become the purchaser, at the price of $22.80; that the sale was confirmed by the court, and the administrator was ordered to make a deed to the purchaser; also, that on the 12th December, 1877, a petition was filed in said court by Thomas T. Munford, alleging that he was in fact the purchaser at the sale, and a mistake in his name had been made in the report and confirmation of the sale, and asking that a commissioner be appointed to make a deed to him, as he had never received a deed from said administrator; that the court granted the prayer of the petition, corrected the alleged mistake, and appointed a commissioner to make a conveyance as prayed; and the conveyance was produced by the defendant.

On final hearing, on pleadings and proof, the chancellor held

[Munford v. Pearce.]

that the complainant was entitled to relief as prayed in her bill, and rendered a decree accordingly; and his decree is now assigned as error, together with the overruling of the demurrers to the bill.

THOS. SEAY, for appellant.

A. A. COLEMAN, *contra*.   (No briefs on file.)

SOMERVILLE, J.—The rules of equity jurisprudence and practice certainly recognize the principle, that a bill for specific performance may be filed, by a *vendor against a vendee*, to compel the latter to accept a deed of conveyance to land. In such cases, however, there must be an offer made by the complainant to convey, on the payment by the defendant of the purchase-money.—Waterman Specif. Perf. §§ 446-447; *Stevenson v. Maxwell*, 2 N. Y. 408.

Technically, the demurrer of appellant may have been well taken, and should have been sustained, so far as it had reference to this aspect of the bill; for, among other probable defects, the bill contained no offer to do equity by conveying title on the payment of the purchase-money by Munford, the appellant.

Yet the principle applies here, that, under the general prayer for relief, a complainant may obtain any appropriate and consistent relief authorized by the statements made by the bill, although he may be mistaken in the special relief prayed.—*May v. Lewis*, 22 Ala. 646.

It is clear that the bill contains every essential averment necessary for the enforcement of a vendor's lien. It alleges a sale of lands, the retention of the title by the vendor as a security of the purchase-money, and that the debt is due and unpaid. Nothing more than this was requisite to bring into activity the conscience and jurisdiction of the court.—*May v. Lewis, supra*. And although a bond for title was executed by the vendor, no averment was required of his readiness or willingness to make title, where the purpose of the suit is merely to enforce the vendor's lien for the unpaid purchase-money; unless there is a special stipulation, that the purchase-money shall not be due and payable until a deed of conveyance is made.—*Dennis v. Williams*, 40 Ala. 633; *Burkett v. Munford*, at the present term; *McIndoe v. Morman*, 7 Amer. Rep. 96.

The appellant went into possession of the lands in controversy, under a valid contract made with the appellee for their purchase. He was, at the time, fully advised of the fact that her title was defective, and that an act of the legislature would be requisite to enable her to convey to him. Any charge or

[Munford v. Pearce.]

presumption of fraud, therefore, based on that ground, would be repelled; and it would be sufficient, if the vendor have title when the appellant is in condition to demand a deed of conveyance, by offering to pay the notes due for the purchase-money.—*Teague v. Wade,* 59 Ala. 369.

The possession of the appellant to these lands has, moreover, never been disturbed, but he has enjoyed their use and occupation without hindrance or molestation. If he desired to retain the lands, and obtain a conveyance of the legal title, a *cross-bill* was the proper remedy.—*Broughton v. Mitchell,* 64 Ala. 210. So, if he desired relief on the ground of fraud, mistake or warranty, or indemnity for part payment of the purchase-money or the construction of valuable improvements, the insolvency of the vendor being alleged, he might, by proper proof, have obtained relief by cross-bill.—*Tobin v. McMahon,* 61 Ala. 125; *Fore v. McKenzie,* 58 Ala. 115; *Burkett v. Munford,* at the present term.

In the absence of these equities, a defendant is not permitted to hold possession under the faith of his purchase, and defend against the enforcement of a vendor's lien for the purchase-money.—2 Brick. Dig. 512, §§ 83, *et seq.*

The appellant was clearly estopped from setting up adversely to the appellee, who was his vendor, the title which he acquired at the administrator's sale made by Knox Lee, under the order of the Probate Court. He was in possession of the lands under the purchase from appellant; and the irresistible inference from the entire testimony and all the facts of the case is, that this purchase was made, by agreement of parties, merely for the purpose of *perfecting the title.* The land was worth about two thousand dollars, and the amount paid by Munford for the title obtained at the administrator's sale was only the nominal sum of *twenty-two dollars.* It does not appear that he ever thought of referring his possession to this title, until the institution of this present suit. He is precluded, under this state of facts, from disputing the title of his vendor from whom his possession was acquired.—*Bliss v. Smith,* 1 Ala. 273; *Helvenstein v. Higgason,* 35 Ala. 259.

There was no necessity to make either the administrator of Augustus Pearce, or his heirs at law, parties to this suit, under the peculiar facts of the case. The bill itself does not show that any one had any interest in the lands described, except such as the appellee was authorized to sell and convey by authority of a special act of the legislature.—Acts 1872-3, p. 154. The bond for title, under which Munford took possession, and made the purchase, recognizes the authority of the appellee to sell and convey, and, by necessary implication, to receive the purchase-money, by virtue of the power conferred by this

[Fields v. Helms.]

special act.   The proof, furthermore, shows that the title of the
heirs was devested by the sale made by Knox Lee, under the
order of the Probate Court.

The rower of the legislature to pass acts of this nature, au-
thorizing a sale or disposition of property belonging to minors,
for their benefit, may be now considered so firmly settled as to
constitute a rule of property in this State.   It can, therefore,
no longer be questioned, at least, in those instances where the
act was passed prior to the present constitution, of 1875.   How
the case might be under the influence of section 23, of article 4,
of this constitution, inhibiting the General Assembly from pass-
ing *special laws*, for the benefit of individuals, in certain contin-
gencies we need not now decide.—*Tindal v. Drake*, 60 Ala.
170–178; *Todd v. Flournoy*, 56 Ala. 99.

The decree of the chancellor must be affirmed.