JOHNSON *v.* KURTZ.

(*Knoxville.* October 26, 1896.)

VENDOR AND VENDEE. *Tender of deed not required, when.*

A vendor, who contracts to execute deed for land after payment by the vendee of the notes given for the purchase price, together with interest thereon, and all costs and attorney fees incurred in their collection, is not required to tender a deed before or in a suit brought to enforce his vendor's lien and collect the notes.

Cases cited: Smith *v.* Christmas, 7 Yer., 565; McFadgen *v.* Eisensmidt, 10 Hum., 567; Halloway *v.* Lacey, 4 Hum., 467; Ricks *v.* Burlesson, 4 Yer., 44; Potter *v.* Coward, Meigs, 26.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

EAKIN & DICKEY for Johnson.

THOMAS, ELDER & THOMAS, and F. M. THOMPSON for Kurtz.

BEARD, J. On the seventh of March, 1887, the complainant entered into a written agreement with one of the defendants, W. H. Kurtz, to sell to him, for the use and benefit of himself and others, who are made defendants in this cause, certain real es-

tate in the city of Chattanooga, and, at the same time, made and delivered to the said vendee the following paper, evidencing the contract of the parties, to wit: "For and in consideration of fifty thousand dollars paid and to be paid as follows— twelve thousand five hundred dollars cash in hand, the receipt of which is acknowledged, and the other, notes of the grantee, Wm. H. Kurtz, of Blissfield, Mich., trustee, each for twelve thousand five hundred dollars, bearing interest at the rate of six per cent. per annum, and payable at the First National Bank, Chattanooga, Tenn., bearing even date with this instrument, due at one, two, and three years from date, the interest accumulating on each note payable annually, or at the end of each succeeding twelve months from the date of the note, a lien for the payment of which notes is hereby retained upon the real estate hereinafter described, I, A. M. Johnson, of Hamilton County, Tennessee, do hereby bargain and sell unto Wm. H. Kurtz, of Blissfield, Mich., trustee, for a syndicate composed of A. D. Ellis, of Blissfield, Mich., Frederick Kurtz, of Mattoon, Ill., and T. A. Frierson, of Chattanooga, Tenn., and the said Wm. H. Kurtz, each taking a one-fourth interest in the property herein described and sold, with the full power in the said trustee and his successors to sell, transfer, and convey whatever interest may be conveyed to him in this instrument, or any further conveyance I may hereafter make to him, in and to the following described real estate, sit-

uated and being in the county of Hamilton, city of Chattanooga, Tennessee, to wit: Lots Nos. (18) eighteen and (20) twenty, Boyce Street, fronting (200) two hundred feet on the west side of Boyce Street, and extending back of uniform width to Fort Street, and agree that the said William H. Kurtz, his successors or assigns, may, himself or themselves, or by his or their agents, enter upon and into the immediate possession of all of said two lots and may subdivide them into lots with streets and alleys, as may seem best to them, for the making of resales of said property or for any other purpose.

"And I, A. M. Johnson, covenant and bind myself and heirs and personal representatives to the said William H. Kurtz and his successors or his assigns, and upon the payment of said three notes to me or my personal representatives, together with the interest thereon and any cost that may lawfully accrue in the collection thereon, to execute a deed to the said William H. Kurtz, trustee, as aforesaid, his successors or his assigns, with covenants that I am lawfully seized of said land or lots, have a good right to convey and general warranty of title. And I further agree and bind myself, my heirs and personal representatives, that, in the event the said William H. Kurtz, or his successors, shall make sale of any one or more lots into which this piece or parcel of land may be subdivided and the money for which said lot is sold or any part of it paid

to me, I will credit the same upon the first one of said three notes of the said William H. Kurtz falling due, and then upon the second and third.

"And I further agree to accept and receive notes that may be executed by subpurchasers of lots from the said William H. Kurtz, which retain a lien on the lots so sold for the purchase money and indorsed to me by the said Kurtz or made payable to me. And I further agree to bind myself, my heirs and personal representatives, that when a lot is sold according to any subdivision that may hereafter be made by the said William H. Kurtz, his successors or assigns, and I shall have received from said subpurchaser an amount fully equivalent to the *pro rata* which that lot shall pay as to the entire purchase price of said two lots, then, in that event, I bind myself, my heirs and personal representatives to convey to said subpurchasers a title in fee simple, with all the covenants hereinbefore mentioned, to any such subpurchaser, free from the vendor's lien hereinbefore retained upon all of said two lots, but I am not required to make any release of any particular lot that would in law release my vendor's lien upon the remainder of the property.

"And I further agree that should all of said three notes of the said William H. Kurtz, trustee, be fully paid to me from the proceeds of lots sold by him, or by the syndicate he represents, together with interest and any legal costs, that, in that event, I will convey all the remainder of said two

lots to the said William H. Kurtz, his successors or assigns, with covenants as hereinbefore stated. And I further agree that should I receive more money or notes by reason of any sale to subpurchasers in the manner herein contemplated than will pay and discharge said three notes of the said William H. Kurtz, that I will return the same.

"And I, Thankful A. Johnson, join in this agreement so far as to release my right to homestead or dower to said. two lots herein described.

"In testimony whereof, we have hereunto subscribed our names this seventh day of March, 1887.

"The dwelling house on these lots having been leased to Thomas A. Cleage until the first of October next, I remain in the house, but the purchaser is to collect all rents accruing from this date, but this reservation is not to prevent the purchaser from taking immediate possession of other portions of said lot.                    "A. M. JOHNSON,
                    "THANKFUL A. JOHNSON."

Upon the delivery and acceptance of this paper, Kurtz, as trustee, paid to Johnson the cash sum provided for in this instrument, and at the same time executed the three notes described therein. Finding themselves unable to meet the notes as they fell due, the trustee, Kurtz, and the parties named in this paper as beneficiaries with him in this purchase, asked for an extension from the vendor, and, in consideration thereof, all joined in a written obligation to meet them as extended. As this obligation

throws no light upon the point which we regard as decisive in this case, it will not be noticed further. Failing to meet these notes when due, as extended, Johnson, the vendor, filed this bill, asking, among other things, that the property described in this executory agreement, be sold, and its proceeds be applied to the vendor's claims.

To this bill a demurrer, embracing numerous grounds, was filed, which, on argument, was overruled. On issues regularly made, a decree was ultimately pronounced by the Chancellor, directing a sale as prayed for by complainant. This decree was executed, and the cause being finally disposed of, the defendants appealed it to this Court. On an assignment properly made, the cause was recently tried by the Court of Chancery Appeals, where the decree of the Chancellor, on the demurrer, was reversed, and a decree was entered dismissing complainant's bill. The case is before us on an appeal from this last decree. It was insisted by the demurrant in the Court below that the contract hereinbefore set out was one of concurrent and dependent conditions—that is, that the obligation of the vendees to pay the purchase money concurred with and was dependent upon the legal duty of the vendor to make a deed, and that the failure of complainant to aver in his bill that he had tendered a deed to his vendee, and it had been refused, was a fatal omission. This was the view taken by the

Court of Chancery Appeals, and hence their dismissal
of the bill.

There is no doubt but that in Courts of Law,
whenever a plaintiff · sues upon a contract of concur-
rent and dependent conditions, it is essential for him
to aver in his pleading and show in his evidence,
if denied, that he has performed or offered to per-
form his obligation of writing, or he will not be per-
mitted his action against the defendant for a breach
of his obligation. There is an unbroken line of
authority in this State for this proposition. Among
the many cases, may be cited *Smith's Heirs* v.
*Christmas*, 7 Yer., 565; *McFadgen* v. *Eisensmidt*,
10 Hum., 567; *Halloway* v. *Lacy*, 4 Hum., 467;
*Ricks* v. *Burlesson*, 4 Yer., 44; *Potter* v. *Coward*,
Meigs, 26. Those cases, however, were all actions
at law. The Court of Chancery Appeals, for their
conclusion, rely on these and similar cases, and they
refer to no case where this rule has been applied
in a Court of Chancery.

After a diligent examination, we have not been
able to discover that this question has arisen before
in this State in any case of equity. jurisdiction, but
outside of Tennessee there are a number of Courts of
the highest respectability which decline to recognize
this as a rule in an equitable action. In *Stevenson*
v. *Maxwell*, 2 N. Y., 408, the syllabus is: "Where,
in a contract for the sale of land, the purchase
money is to be paid or secured, and the convey-
ance executed on a particular day, and neither party

performs or offers to perform on the day, neither can maintain an action on the contract. In such a case, however, either party may claim specific per-formance in equity, making the offer incumbent upon him in the bill, and the failure to make a tender before the commencement of the suit will only affect the question of cost."

In *Bruce* v. *Tilson*, 25 N. Y., 194, and *Free-son* v. *Bissell*, 63 N. Y., 168, the same rule was announced, the last of these cases being an action on the part of the vendor to enforce his equitable lien for unpaid purchase money, under a contract of sale of land, similar in its general features to the one sued on in this case.

In *Rutherford* v. *Haven & Co.*, Withrow, Vol. II. (Iowa) Rep., 507, which was an equitable action of a vendor seeking foreclosure under contract containing dependent conditions, the Court said: "In our opinion, the reason for the rules in a law action does not apply in a Court of Equity. At law, if the vendor recovers his judgment for the purchase money, it must necessarily, from the nature of the tribunal, be unconditional or without terms. In equity the Chancellor has full power to protect the vendee and to make the execution and deposit of the deed with the clerk or other person to be named, a condition precedent to the enforcement of the decree. . . . And especially is this so in view of the fact that the Chancellor is justified in awarding any costs against the complainant

which it shall appear might have been avoided by a prior offer to perform on his part." See, also, *Mumford* v. *Pearce*, 70 Ala., 452.

There is certainly much of sound reason in the refusal of these Courts to enforce this technical rule of the common law in an equity cause, where the Chancellor has full power to protect the vendee, by the imposition of costs or otherwise, up to the final decree; yet, we do not feel called upon, in this cause, to determine whether such a refusal would be warranted in our practice, as we do not agree with the Court of Chancery Appeals in its conclusion that this is a contract of dependent and concurrent conditions. Whether conditions are dependent or independent is not determined by a reference to arbitrary rules, but by ascertaining the intention of the parties, upon a fair and reasonable construction of the contract. *Glazebrook* v. *Woodrow*, 8 T. R., 371; *Jones* v. *Barkley*, Doug., 684; *Greene* v. *Linton*, 7 Port. (Ala.), 133 (S. C., 31 A. D., 707); *Laud* v. *Pomona*, 153 U. S., 576.

The contract in this case provided for the payment of the purchase money in three installments, and it is evident that the parties did not contemplate that, upon the payment of either the first or the second of these maturing installments, that the vendee could demand a deed. These were understood to be, and were, in law, independent covenants, and suit might have been brought on one or both of them, as they matured, and even in a Court of Law

the vendor would not have been required to aver a tender of a deed. But it is insisted for the defendant that it is otherwise as to the last installment; that the covenant to pay that is dependent. It is true that Courts of Law, at least where the contract provides for installment payments, lean to a construction which will make a covenant to make a deed "at the time of" or "upon" or "as soon as" the purchase money is paid, concurrent and dependent, and ordinarily would require "a vendor, in his suit, whether he sues for the last installment alone, or joins installments that became due before the time, to aver a conveyance or an offer to convey." *Hill* v. *Grigsby*, 35 Cal., 656; *Beecher* v. *Carrodt*, 13 N. Y., 108.

But we think an examination of this contract makes it clear that the parties did not intend that this rule should be applied to the covenant to pay the last of these purchase money notes. This note, as did the other two, provides not only for the payment of a fixed sum, being one-fourth of the consideration for the property, but also for the payment of costs and attorney's fee "in the event" it is not paid and is placed in the hands of an attorney for collection. It was only when the notes, as well as all such costs, were fully discharged that the vendor was obligated to make a title. Whether the vendee placed in the hands of his vendor the notes of subpurchasers to the credit of their original purchase money notes, as by the contract he

Johnson *v.* Kurtz.

was permitted to do, or, failing to do this, he altogether neglected to pay his obligations as they matured, and they passed into the hands of an attorney for collection, in either event "all costs," in addition to his notes, must be paid by the vendee before he could demand a deed. One of the contingencies contemplated by the parties has happened—that is, the notes not having been paid, they were passed to the vendor's solicitor for suit. No longer will the payment of the purchase money and interest entitle the vendee to a deed; that will not discharge his obligation. The fee of this solicitor and the costs of Court have accrued, and until these are also discharged the vendee can no more call on his vendor to execute a deed than he could, having satisfied the first and second installments, before paying the third and last.

It seems to us very clear that the parties so understood this contract, and we think that neither argument nor illustration can make more apparent this intention.

The decree of the Court of Chancery Appeals is reversed and the decree of the Chancellor is affirmed.