Gardiner, J.
 

 delivered the opinion of the court, in which he first considered the second exception, and stated as the conclusion that the exception was not 'well taken, and should not have been allowed by the court below. [This part of the opinion is omitted, as embracing nothing of general interest,] In regard to the third exception he proceeded as follows.
 

 As to the third exception. The master had charged interest upon the purchase money agreed to be paid by the defendant for the lot on the north side of Cedar-street, from the 6th day of May, 1830. In this the court below have- decided that he erred. This is the more important question in the case. The agreement for the sale of this parcel was made on the 29th of January, 1830. According to which the complainant “ in consideration of #500 per foot, to be paid, or secured, on the first day of May thereafter, covenanted to execute a full and proper conveyance of all his right and interest in the moiety of said lot, and then, when the legal title was obtained, he would do any legal act to convey his interest in said lot upon payment of the money aforesaid.” It is objected that the complainant is not entitled to interest. 1st, Because the defendant did not take possession under the agreement; and 2d. Because the complainant was in default in not tendering a conveyance.
 

 1st. As to possession. At the date of the above contract, the parties were jointly interested in this property, under the lease executed by the owner in fee, the father of the complainant, to Bradshaw, and assigned by the latter to Maxwell, for his own benefit, and that of the complainant. Maxwell therefore had the legal title to the possession of all' the premises embraced in
 
 *414
 
 the lease, including the parcel in question. He erected valuable stores on the lot contracted to him, in 1830, and the year following; and other valuable improvements, in building and otherwise, were made upon the residue of the property by his direction. And the question is whether the possession and control of this parcel of the premises are to be referred to the lease, or to the contract, in exclusion of the complainant, and as sole owner. If the defendant claimed to hold under" the lease, then by the 2d article of the agreement of Nov. 28, 1828, the rent of all the premises including the lot in question, was to be equally divided between Maxwell and the complainant, “ after deducting all charges fairly made by the former concerning the premises.” The defendant should therefore have charged the advances made "by him for the improvements, and credited the rent. He did neither one nor the other; on the contrary, in the account stated in 1833, by the concurrence of both par ties, no credit even for ground rent is given to the complainant, for this lot, and Maxwell is charged with the purchase money- and interest thereon, from the date of the agreement. There can be no question that Maxwell made the improvements on the parcel of the land for himself exclusively, without recognizing the right of the complainant to be consulted as to expenditures, or to an account of the profits. The contrary has never been claimed or pretended by him at any time. There cannot be a more decisive, or unequivocal act of possession, than the erection of buildings upon the lot contracted to him, for his own benefit, and the receipt of the whole rents and profits to the exclusion of his co-proprietor. The evidence leaves no doubt upon my mind that the defendant was in possession under the agreement. , The rents and profits exceeded the interest upon the purchase money, after deducting all charges ; and he is bound upon every principle of equity and justice to pay interest, unless the complainant has forfeited his claim to it by his misconduct.
 

 His alleged misconduct consists, in not tendering a conveyance of his equitable right to the defendant. This does not amount to a default. The purchase money was to be paid or secured on the first of May, and it was as much the duty of the defendant to pay at the time stipulated, as of the vendor to
 
 *415
 
 convey. Neither could sue at law, without a tender of a deed by the one party, or of the purchase money or security by the other. Either 'party might, however, go into equity for a specific performance, and make the offer incumbent upon him in the bill; and the failure to make a tender, before the commencement of the suit, would only affect the question of costs. (12
 
 Vesey,
 
 25.)1 The most that can be said is, that the complainant did not put the defendant in default. Not that he was in default himself. This is not sufficient to excuse the payment of interest. Sugden says it must be a strong case, clearly made out, in which a purchaser shall not pay interest where he has received the rents and profits. (3
 
 Sugden on Vendors,
 
 101,
 
 ch.
 
 16; 8
 
 Vesey, jr.
 
 1489.) Here the defendant had the benefit of the purchase money. His situation is the same as if he had received a conveyance and given security according to the contract, when he must have paid interest. He was compelled to borrow to make improvements; the money was therefore of importance to him. In addition to which he received all the rents and profits. A weaker case for exemption from the payment of interest, can scarcely be imagined. In
 
 Flodyer
 
 v.
 
 Cocker,
 
 (12
 
 Vesey, 27)
 
 which strongly resembles the present in its main features, it was held that
 
 “
 
 the vendee, by taking possession under a contract of sale, proceeds upon the supposition that the contract will be executed, and therefore agrees from that day he will treat it as executed. The act of taking possession is an implied agreement to pay interest.”
 

 The fact that the lot was unimproved when sold, does not vary the equity of the case. It was vacant when purchased by these parties, but we cannot suppose that after paying $6000 for opening a street, they intended it should remain so. They designed to improve it. The contract deprived the complainant of the right to do this on his own account or in conjunction with the defendant, and transferred that privilege to the latter exclusively. And the parties have agreed that the complainant’s interest, to which this right of improvement was incident, was worth $7000 and upwards. The defendant has treated the contract as executed and exercised that privilege, and for áught I can perceive should pay interest. Upon general prin
 
 *416
 
 ciples, I am inclined to think that whenever a vendee takes pos session of premises, as owner, under a contract of sale of this description, he is bound to pay interest, whether the land is or is not productive, so long as his possession is undisturbed, and the vendor is not in default; and that the omission to execute a conveyance before demand and an offer to pay the purchase money by the vendee, is not a default within the rule.
 

 It was urged that the complainant had repudiated the agreement, and some weight seems to have been given to the suggestion by the vice chancellor and chancellor. There was a misunderstanding between the parties in 1831, as appears by their correspondence. But we have no means of judging of the merits of that controversy. The complainant insisted that the
 
 writing oí the
 
 29th of July, 1830, was a consent merely to unite with the defendant in a sale to a third person, and did not give the right to the defendant to become the purchaser. The latter in his reply says nothing directly upon the subject of that agreement, but claims that the Bradshaw lease had been purchased by him, and as assignee, he demands a conveyance of the complainant, as one of the
 
 heirs
 
 of the elder Stevenson; but with a view to ascertain the amount to be paid to him for that conveyance, he proposes to adjust the claim of the complainant under the agreement of the 29th of January.
 

 So far as we can judge from the correspondence, both parties insisted upon grounds from which they subsequently receded. But as early as 1833, through the interference of friends, the whole matter was adjusted. The agreement was to stand confirmed by the complainant, and in consideration thereof, Maxwell was to waive all claim for commissions and services in making improvements, and receive interest at the rate of 6 per cent on his advances made on joint account of the parties. An account was shortly afterwards made out by an accountant who was employed by the complainant, and furnished with the materials from which it was compiled by Maxwell, and paid by him for his services; a copy of which was left with each of the parties, and acquiesced into the time of taking the account before the master. In that account, Maxwell was charged with the purchase money of this lot, and interest from the time of
 
 *417
 
 the purchase. This account is referred to in the bill, and admitted by the answer of the defendant according to his belief to be correct so far as it goes, but that it does not embrace a private account, in his favor, against the complainant, and was therefore not a settlement of
 
 all
 
 the pecuniary transactions between the paities. The items for the purchase money and interest are distinctly admitted in the answer as constituting a part of the account. No objection- is there made, nor any of the matters, now alleged, as constituting an equitable ground of an exemption from the payment of interest; no pretence that the defendant has not always had possession under the contract, or that it was repudiated by the complainant, or that a demand-was ever made of a conveyance, or that one could not have been obtained
 
 whenever required,
 
 upon payment of the purchase money, or by furnishing the security mentioned in the contract. In the absence of all allegations of this sort, and when a man of the defendant’s professional standing has sworn to his belief that a charge for interest was correct, courts and their officers are fully authorized in assuming it to be so. The conclusion, to my mind, is inevitable, that the defendant is either mistaken in his answer or wrong in his exception. I think the master right in his report, and that the decrees of the chancellor and vice chancellor should be reversed, so far as relates to the 2d and 3d exceptions, with costs in the courts below, but without costs upon this appeal.
 

 Ordered accordingly.