54 471
68 456

# LAKE PHALEN LAND & IMPROVEMENT CO. *vs.* JOHN A. STEES *et al.*

Argued July 6, 1893. Decided Aug. 22, 1893.

### The Contract Stated.

A contract was entered into in January, 1886, for the sale of certain land. Five thousand dollars of the price was to be and was paid at the time of its execution. Forty-five thousand dollars was to be paid at the time of the conveyance, "and the balance, $125,000, on or before five years after the date hereof, said deferred payment to be secured by promissory note drawing interest from May 1, 1886, * * * payable semiannually, and said note to be secured by purchase-money mortgage on above-described property." The vendee was allowed thirty days to examine the title and complete the contract. If the title should be found to be defective, the vendee had his election to avoid the contract, and receive back the $5,000 paid.

### Subsequent Facts Stated.

The title was discovered to be defective, but the parties did not assume either to terminate the contract or to insist upon present further performance. The vendors remained in possession, receiving the rents and profits, and proceeded to perfect their title. Six years elapsed before they were able to convey a merchantable title. Thereafter the question arose whether the vendee, seeking specific performance, was under obligation to pay interest on the $125,000 from May 1, 1886, as specified in the contract.

### Intent of the Parties at the Time of Making the Contract.

Contract considered as framed with reference to a speedy perfecting of the sale by a simultaneous performance of its terms, the vendors conveying a merchantable title, and the vendee at the same time, and not before, paying $45,000, and entering into the expressed absolute obligation to pay the $125,000, giving his note and mortgage as specified.

### Contract as to Interest Modified by Subsequent Facts and Conduct of Parties.

*Held*, that the impossibility of performance as contemplated, and the necessary postponement of the conveyance for many years, rendered it impossible to observe, or now to enforce, consistently with the paramount intention of the parties, the provision that the purchaser's note for $125,000 should draw interest from May 1, 1886.

### Same as to Taxes.

So the provision that the vendee should pay the taxes became inoperative while the vendors were unable to convey.

**But not as to Assessments for Permanent Improvements.**

> Special city assessments for the permanent improvement of the property *held* chargeable to the vendee.

Appeal by defendants, John A. Stees, Charles J. Stees and Sarah Kirk Stees, executors of the will of Washington M. Stees, deceased, from an order of the District Court of Ramsey County, *John W. Willis*, J., made March 4, 1893, denying their motion for a new trial.

On January 11, 1886, Washington Stees and wife made a contract under seal with James C. Stout to sell and convey to him two hundred and seven (207) acres of land lying in Sections twenty-one (21) and twenty-eight (28), T. 29, R. 22, in the northeastern part of the City of St. Paul. He covenanted to pay them therefor $175,000 as follows: $5,000 on that day, $45,000 on delivery of the deed, and the balance, $125,000, on or before five years. This sum was to be evidenced by his note for that amount drawing interest from May 1, 1886, till paid, at the rate of seven per cent. per annum, payable semiannually, and was to be secured by a purchase-money mortgage on the land. Stees and wife covenanted to furnish a complete abstract of the title within a reasonable time and Stout was to have thirty days thereafter to examine it and complete the contract on his part. Should default be made by Stout in any payment, interest or taxes, or in keeping any covenant, then the contract was to be void at the election of Stees and wife, time being of the essence of the contract. Stout covenanted to pay the taxes of 1885 and all subsequent taxes and assessments. In case the title should be found not merchantable, Stees and wife were, at the option of Stout, to have a reasonable time to make it merchantable. But if title was not, and could not be made, merchantable, Stout could elect to declare the contract void and have the $5,000 returned. This contract was on February 15, 1886, recorded in Ramsey County Registry of Deeds. Stees and wife soon furnished the abstract, and Stout discovered a defect in the title to a large part of the land and notified them. All parties had, prior to this, supposed the title perfect. The plaintiff, the Lake Phalen Land and Improvement Company, was incorporated, and Stout assigned to Joseph Lockey all his rights, and Lockey assigned to the corporation.

The defect in the title was this: In 1859, Andrew Bell Patterson placed three land warrants in the hands of David Lambert to locate as his agent. Lambert located them October 17, 1849, on this land, but in his own name, and the patent was issued to him January 10, 1851, by the United States. Lambert died intestate at St. Paul in November, 1849. The Probate Court of Ramsey County considered the land to belong to Patterson and did not adjudge it to Lambert's heirs. Patterson thereafter treated the land as his own, and sold it, and his right and title by mesne conveyances came to Washington M. Stees. Tallmadge A. Lambert, the son and only heir of David Lambert, commenced ejectment May 27, 1887, to recover the land. He obtained findings and an order for judgment, October 4, 1890, in the District Court, but on appeal from an order refusing a new trial, this court reversed the trial court. *Lambert* v. *Stees*, 47 Minn. 141. On January 22, 1892, a second trial of that action was had, and Stees' claim and title were established. All parties acquiesced, and on May 2, 1892, final judgment was entered, confirming Stees' title. But meantime, on January 31, 1890, Washington M. Stees departed this life, testate, at St. Paul. His will was proved in the Probate Court of Ramsey County and the defendants above named received letters testamentary.

When the Stees title was finally perfected, the plaintiff offered performance of the Stout contract, but disputes arose as to the interest on the $125,000, and as to taxes and assessments meantime upon the land. This action for specific performance was commenced to settle these questions and was tried January 17, 1893. The court found that plaintiff should pay interest only from May 2, 1892, when the title was finally perfected, and that it should be credited for taxes and assessments paid by it prior to that date, and interest on such taxes, $25,726.81. That on payment of the balance, $144,273.19, with interest thereon from May 2, 1892, the executors and the devisees, who were all made defendants, should convey the title to the corporation. The defendants moved the court for a new trial. Being denied, they appeal.

*Eller & How*, for appellants.

The errors complained of in this proceeding are two: *First*, the refusal of the court to allow interest upon one hundred and twenty-

five thousand dollars ($125,000) of the purchase price from May, 1886, to May 2, 1892. *Second*, the deducting from the unpaid portion of the purchase price the sum paid for taxes and assessments upon said property, with interest thereon. The provision of the original contract was, that in case the title to the premises, or any part thereof, should not be marketable, the vendors might, at the option of the vendee, have a reasonable time to make it marketable, and if it could not be made marketable, the earnest money was to be refunded. This option was exercised by the vendee, and Stees was given a reasonable time to perfect his title. The case presented is not one for the application of the doctrine of compensation or abatement from the purchase price, for the defendants are ready, willing and able to convey all the land that was ever contracted for. It is rather an application on the part of the plaintiff for special equitable relief in the nature of having the contract rescinded, as to the features that it deems burdensome, and enforced as to those portions that it regards as beneficial. But it is not within the power of a court of equity to make a new contract for the parties, or change the terms of the old one. *Hepburn* v. *Dunlop*, 1 Wheat. 179; *Ormond* v. *Anderson*, 2 Ball. & B. 369; *McKean* v. *Read*, 6 Litt. (Ky.) 395; *Reed* v. *Noe*, 9 Yerg. 283; *Courcier* v. *Graham*, 2 Ohio, 335.

By the contract of the parties the plaintiff is required as a condition of performance to pay interest on one hundred and twenty-five thousand dollars ($125,000) from May 1, 1886. It is a familiar maxim of equity jurisprudence, frequently resorted to in giving construction to contracts of this character, "that what ought to be done, or is agreed to be done, will be considered as done." Applying this principle to the present case for the purpose of determining the agreement of the parties as to the purchase price to be paid, the contract to give a note and mortgage drawing interest from May 1, 1886, as a part of such purchase price, must be considered the same as if they had been actually given, and as creating the same obligation that such a note and mortgage would create, had they been given. If the contract is a hard or inequitable one, plaintiff entered into it with full knowledge of all its hardships. Where a party enters into a hard bargain with his eyes open, equity will not relieve him unless he can show fraud in the party contracting with him, or some undue means made use of, to draw him into such an

agreement. *Willis* v. *Jernegan*, 2 Atk. 251; *Lee* v. *Kirby*, 104 Mass. 420; *Webb* v. *Direct L. & P. R. Co.*, 9 Hare, 129; *Evans* v. *Walshe*, 2 Sch. & Lef. 519; *Morrison* v. *Peay*, 21 Ark. 110; *Nims* v. *Vaughn*, 40 Mich. 356; *Revell* v. *Hussey*, 2 Ball. & B. 280; *Adams* v. *Weare*, 1 Bro. C. C. 567; *Prebble* v. *Boghurst*, 1 Swans. 329.

It is also a rule of equity with regard to specific performance of contracts that they must be decreed to be performed on both sides, and entirely, or not at all. *Addington* v. *McDonnell*, 63 N. C. 389; *Heinlan* v. *Martin*, 53 Cal. 321; *Worrall* v. *Munn*, 38 N. Y. 137; *Bostwick* v. *Beach*, 105 N. Y. 661.

The delay in carrying the contract into effect has arisen from the condition of the title and is not attributable to any fault or misconduct of the vendors. In such case, where interest is stipulated for, the rule has become well settled, certainly in England, and we have found no ruling to the contrary in this country, that no matter how long a delay there may be in the settlement of the question of title, or how small the rental value may have been in the meantime, the vendee, if he desires performance of the contract when the title is made good, must comply with the terms of the agreement and pay the stipulated interest. *Esdaile* v. *Stephenson*, 1 Sim. & St. 122; *Bannerman* v. *Clarke*, 26 L. J. Eq. (N. S.) 77; *Rowley* v. *Adams*, 12 Beav. 476; *Sherwin* v. *Shakspear*, 5 De G., M. & G. 517; *Vickers* v. *Hand*, 26 Beav. 630; *Greenwood* v. *Churchill*, 8 Beav. 413; *Palmerston* v. *Turner*, 33 Beav. 524; *Phillips* v. *Silvester*, L. R. 8 Ch. App. 173; *Leggott* v. *Metropolitan Ry. Co.*, L. R. 5 Ch. App. 716; *Riley* to *Streatfield*, 34 Ch. Div. 386; *Matson* v. *Swift*, 5 Jur. 645–647; *Williams* v. *Glenton*, 34 Beav. 528; *Tewart* v. *Lawson*, 3 Sm. & G. 307.

It will doubtless be claimed here that because the provision in most of the contracts arising in the English cases was one especially "for interest in case of delay from any cause whatever," or words equivalent thereto, that these authorities are to be distinguished from the present case, and in no sense furnish any principle by which it should be determined. This, however, we do not think by any means follows. For though the contract may not have been in all respects as broad as those considered in the English cases, still it does contain a positive agreement that $125,000 is to bear in-

terest from May 1, 1886, until paid, and without changing this in any degree, provides for the very delay that has occurred.

The court erred in deducting from the purchase price to be paid, taxes and assessments paid by plaintiff's assignor, and interest thereon. The contract in this particular is clear and decisive, as follows: "The party of the second part shall pay the taxes of 1885 and all subsequent taxes and assessments." Language more positive than this could not have been employed. Of the sums so allowed to be credited and applied on account of purchase money, over twelve thousand dollars ($12,000) was for local assessments for public improvements especially beneficial to the property, and assessed or assessable upon it for the reason that it was permanently benefited to at least that amount by reason of such improvements. Such assessments are in the nature of charges for permanent improvements upon the property, made subsequent to the contract, the full benefit of which, in case of performance, belongs to the vendee. All that the vendee became entitled to under the contract was the property as it existed at the date of the contract.

*T. R. Palmer* and *Lusk, Bunn & Hadley*, for respondent.

This is not a case in which the vendee ought to pay interest while the vendor was in possession and his title bad. All we ask here is to be decreed to pay according to the fair meaning of the contract; and if the contract has been modified or strict performance waived by the parties themselves, we are entitled to all the benefit those facts give. The answer admits that the $45,000 payment does not bear interest and was not due before May 2, 1892. And this is a well-advised admission, because, this sum was to be paid on delivery of the warranty deed and not before. The defendants are forced by this necessary concession into the absurd result, that though the payment of $45,000 to be first made was not due until May 2, 1892, the deferred payment to be made about five years later fell due first, maturing on January 11, 1891, that it had been due a year and four months before the first payment fell due. And they are forced to claim further, that though the first payment did not draw interest till May 2, 1892, the last payment drew interest from May 1, 1886; that it had been drawing interest for six years before the cash payment fell due. Such results may well induce the conviction that

the construction which forces them, however plausible, is unsound and contrary to the intent of the parties. Our view of the contract is that it does not bind the vendee to pay interest or anything or in any event before the vendor makes his title good and offers his deed. There is no express provision in the contract for interest in case of delay, however occasioned. The only mention of interest is on the balance of $125,000. No balance could arise before the time when the $45,000 was to be paid by the terms of the contract. This balance was to be evidenced in a note secured by mortgage on the estate. The note and mortgage were plainly not to be delivered till the title was good and deed passed. This note was to bear semi-annual interest, the first interest falling due October 1st. It is not a fair construction based upon the intent of the parties, to say that this interest was provided for payable October 1, 1886, and thereafter every six months, even though the title was bad and the vendor remained in possession. The giving of a note and mortgage for $125,000 was most clearly conditional on the deed passing, and to be done at the same time. And if the giving of the note and mortgage was so conditioned, it ought to follow that payment of interest on that note and that mortgage, depended on the same condition. The note and mortgage were not expected to bear interest before given. And here is the center of the fallacy which has led counsel astray. It was, in short, not the purchase money which the contract said was to draw interest, but the note and mortgage. And how could they draw interest before they were to be executed as provided in the contract? A case, the converse of this, but very conclusive of the construction which ought to be given to this contract, is *Birch* v. *Joy*, 3 H. L. C. 565. And see *Owen* v. *Davies*, 1 Ves. 82.

We do not dispute the rule, nor shall we do so, that a court of equity, regarding as done that which is agreed to be and ought to be done, treats the contract as performed from the time when it ought to be performed, thus from that time regarding the vendor as owner of the purchase money and the vendee as owner of the land, allowing the vendor interest and the vendee rents and profits. And though this rule is frequently stated as if it always operated from the time fixed in the contract for performance, this is not strictly accurate. Wherever it has been necessary to distinguish between that time and the time when the parties ought to have

performed the contract, the latter is held controlling. There are several exceptions to this general rule. The rule itself is an equitable one, based on a fiction, invented and designed not to work injustice, but to arrive at what is fair and right in point of fact. It yields, as the cases show, to the equities of every case, and is never applied to work injustice. We rely not so much, however, on an exception to this rule, for under the rule itself the question is: When ought the vendee to have performed? Here he neither ought to, nor could, have performed before May 2, 1892. *Carrodus* v. *Sharp*, 20 Beav. 56; *Binks* v. *Lord Rokeby*, 2 Swans. 222; *Stevenson* v. *Maxwell*, 2 Sandf. Ch. 272; s. c. 2 N. Y. 408; 2 Dart, Vendors & P. 628; 2 Sugden, Vendors, 318; *Hepburn* v. *Dunlop*, 1 Wheat. 179; *Esdaile* v. *Stephenson*, 1 Sim. & St. 122.

Mr. Sugden, vol. 2, page 323, expressly indorses our distinction between agreeing to pay interest on the purchase money and agreeing to make a mortgage bearing interest. On this ground, he says, *Jones* v. *Mudd*, 4 Russell, 118, was well decided, for he says in that case there was no agreement to pay interest on the purchase money, the contract being to make a mortgage on October 11, which mortgage was to bear interest from date. If this case was well decided, and if Mr. Sugden's proposition explaining it is sound, it ends this discussion. And *Birch* v. *Joy*, 3 H. L. C. 565, cited by the appellants to show that equity would regard the mortgage as executed, is not opposed in the least to this view. In *Birch* v. *Joy* the vendee had possession and rents and profits, which was the reason why the court charged him interest on the mortgages though not executed, and why they were regarded in equity as if executed.

*Sherwin* v. *Shakspear*, 5 De G., M. & G. 517, and other cases are opposed; but they rest on strong stipulations, as "if delay occur from any cause whatsoever." This clause is the common one in England, and in the later cases is held to provide for and cover flaws of vendor's title unknown to him, but not his wrongful acts. Even this result has been reached after much conflict of decision.

In this case it was not necessary for the vendee to set aside the purchase money and let it lie idle, for that would be making him pay interest. Though he might if he chose set aside his money and

claim the rents and profits, he was not bound to do so, but might leave the vendor his rents, and use his money. *De Visme* v. *De Visme*, 13 Jur. 205, 1 Mac. & G. 353; *Binks* v. *Lord Rokeby*, 2 Swans. 222; *Carrodus* v. *Sharp*, 20 Beav. 56.

As to the taxes and assessments, the elementary rule is that performance by the vendor and the vendee are concurrent acts, unless otherwise expressly agreed. One is conditioned upon the other. If the vendor does not perform, the vendee need not, and delay on one side justified the same delay on the other. We can see no reason why on this principle the vendee was not excused from performing in every part during this delay. He was under no more obligation to pay the taxes than to pay the purchase money. And the taxes are simply an equivalent to the public for the protection and security which the law year by year throws about the land and its possession. They are consequently a burden resting justly on the possession. They follow it and go with it, and the obligation to pay rests equitably on the possessor. We could not take possession as and when the contract contemplated, and therefore the payment of taxes conditioned on that possession is not our burden. The same argument applies which we make as to the interest. There is no agreement that we shall pay these taxes during any delay in making out a title. Taxes are like any other necessary expenses to keep up the estate, such as ordinary repairs. See *Carrodus* v. *Sharp*, 20 Beav. 56. We can see that a different rule might justly apply to local assessments. They represent permanent improvements on the land of which the vendee is now to get the benefit.

DICKINSON, J. On the 11th of January, 1886, Washington M. Stees and his wife, Ann K. Stees, entered into an executory contract with one Stout for the sale and conveyance to the latter of a large tract of land within the corporate limits of the city of St. Paul. This plaintiff, having by assignment succeeded to the interest of Stout, prosecutes this action for a specific performance of the contract. The controversy is as to the obligation of the plaintiff, under the contract, in respect to the payment of interest and of taxes and assessments on the land since the making of the contract.

By the terms of the contract the vendors were to convey by warranty deed upon the performance by the vendee of his part of the

agreement. The vendee was to pay as the purchase price $175,000, as follows: $5,000 cash at the time of the execution of the contract, $45,000 at the time of the execution and delivery of the warranty deed, "and the balance, $125,000, on or before five years after the date hereof, said deferred payment to be secured by promissory note drawing interest from May 1, 1886, till paid, at the rate of seven per cent. per annum, payable semiannually, and said note to be secured by purchase-money mortgage on above-described property." The vendors were to furnish the vendee with an abstract of the title within a reasonable time after the execution of the agreement, and the vendee was to have 30 days thereafter to examine the title and complete the contract. On demand of the vendee within that time, and upon his complying with the terms of the agreement, the conveyance was to be made; but, if the vendee should be in default in making said payments, or in paying interest or taxes, or in respect to other covenants on his part, the agreement was to be void, at the election of the vendors, time being declared to be of the essence of the agreement. The vendee was to pay the taxes for 1885 and all subsequent taxes and assessments. It was further provided: "In case the title to said premises, or any part thereof, be not merchantable, the parties of the first part [vendors] may, at the option of the party of the second part, [vendee,] have a reasonable time to make said title merchantable. But if said title is not and cannot be made merchantable, or if for any other default made by the parties of the first part, the party of the second part elects to declare this agreement void, then and in that case the said $5,000 paid at the time of the execution and delivery of this agreement, as aforesaid, shall be forthwith returned to the said party of the second part. And if said party of the second part shall fail to perform said contract on his part within said period of thirty days, then this contract shall, at the option of the first parties, be at an end, and the said $5,000 paid at the date of these presents shall be forfeited to said first parties."

As required by the contract, $5,000 was paid at the time of its execution, but no more of the purchase price has been paid. A few days after the execution of the contract, abstracts of title were furnished, and upon examination it was discovered, about the 2d of February, 1886, that Stees' title to a large part of the land was not

merchantable. Neither party had previously known this fact. Thereafter both parties seem to have considered that there could be no further performance of the contract until the title should be perfected. Neither party tendered further performance, although they do not seem to have determined to wholly terminate or rescind the contract. The vendors remained in possession of the premises, receiving the rents and profits, and set about perfecting their title. While Stees was endeavoring to perfect his title, and in May, 1887, one Lambert commenced an action against him for the recovery of the land, claiming title thereto. This asserted title was based upon the facts which had been found, upon the examination of the abstracts, to render the title of Stees unmarketable. The litigation concerning the title, thus commenced, was carried on until May 2, 1892, when the title was finally adjudged to be in Stees.

The property has been used for farming purposes. Its rental value for such purposes has not exceeded $500 a year, while the yearly interest on the $125,000 would be $8,750.

During the period while the title remained unsettled, and since January 11, 1889, the plaintiff had paid general taxes on the property for the years 1888, 1889, 1890, and 1891, and has also paid certain city assessments for local improvements on the property. It appears that prior to 1889, and while the title remained unsettled, the vendors insisted that the obligation rested on the vendee to pay the taxes, and declared that if he should fail to pay the same they should elect to avoid the contract. Since the title of Stees was established the parties have been willing to complete the performance of the contract in accordance with their respective claims as to their rights and obligations. The controversy now is (1) whether (as the defendants claim) the plaintiff is required by the terms of the contract to pay interest on $125,000 of the purchase price from May 1, 1886, or only (as the plaintiff insists, and as the trial court has decided) from May 2, 1892, when it became possible for the vendors to convey a good title; and (2) whether the taxes and assessments above referred to, paid by the plaintiff since January, 1889, should have been paid by the vendors, and ought now to be deducted from the unpaid purchase price. The court allowed this deduction in favor of the plaintiff. We shall consider these two questions in their order.

This was not an absolute contract of sale, nor did the parties treat it as such. The sale was to be contingent upon the title of the vendors being found to be, or being made, merchantable. The contract did not obligate the vendee to accept a conveyance, or to pay the purchase price, or to give his promissory note therefor, unless, nor until, upon examination, the title should be found to be good in the vendors. After the execution of the contract and the payment of the $5,000 earnest money, the further performance of the contract was dependent upon the state of the title. If that should be found to be unmerchantable, the vendee might withdraw from or rescind the proposed sale, and have the $5,000 repaid; or, at his option, the other parties might have a reasonable time to make their title merchantable. Not until the vendors should be able to complete the performance of the contract on their part by the conveyance of such a title was the vendee required to proceed further in the performance on his part. At the time of such conveyance, and not before, the purchaser was to pay the further sum of $45,000, and to give his promissory note for the "balance" of the purchase price, and to secure the same by a mortgage on the property purchased. It is plain enough that it was not intended that the mortgage back to the vendors should be executed before the conveyance by them to the vendee of the premises to be mortgaged. That such performance by both parties was to be contemporaneous is indicated also from the fact that, while provision is made for the return of the $5,000 in case the sale should not be perfected by reason of the title being defective, there is no provision for the surrender of any note that may have been given, nor for the repayment of any other money. But, apart from these particular features of the contract, it is apparent from its whole terms that it was to be performed by both parties in these respects simultaneously. *Birch* v. *Joy*, 3 H. L. Cas. 565. So long as the vendors should be unable to perform, and while the vendee remained at liberty, because of a defective title, which might never be perfected, to withdraw from the contemplated purchase, he was not required either to pay the balance of the purchase money, or to assume an absolute obligation to pay it by giving his note therefor, payable within the definite time named in the contract.

The contract was undoubtedly drawn as it is in the expectation

that the title would be found to be good, or would be made good, within a short time, and that the sale would be perfected, if at all, before or at about the time named for the commencement of interest on the note to be given for the greater part of the purchase price. That time was fixed upon that assumption, and, as we may say, upon the unexpressed condition that such would be the case. But contrary to what the parties contemplated, and hence what was not explicitly provided for, six years elapsed before it could be determined that the vendors had any title, or that the proposed sale could ever proceed any further. Under these circumstances, the vendee was not required to treat the transaction as though it were already, or certainly would become, a perfected sale. He could not (as the court found) safely take possession, as though he were already the owner, or certain to become such. He could not venture to improve the property so as to realize the benefits which an owner may derive from such uses of his property as it may most advantageously be put to. The vendors, recognizing this, did not assume to treat the other party as an absolute purchaser. They remained in possession, and continued to receive such rents and profits as the property in its present condition yielded. In such a case a court of equity will not treat the transaction as though it were an absolute contract of sale, certainly susceptible of specific performance; will not force the possible purchaser, remaining out of possession, into the position of a trustee for the vendor, as respects the purchase money, which he may never become obligated to pay, and charge him with interest thereon, especially where the interest would so greatly exceed the value of the use of the land in its present state. *Binks* v. *Rokeby*, 2 Swanst. 222, 225; *Carrodus* v. *Sharp*, 20 Beav. 56; *Esdaile* v. *Stephenson*, 1 Sim. & S. 122; *Jones* v. *Mudd*, 4 Russ. 118; 2 Sugd. Vend. (8th Amer. Ed.) 318, bottom p. 630; Dart, Vend. (5th Ed.) 628, bottom p. 481. See, also, opinion in *Stevenson* v. *Maxwell*, 2 Sandf. Ch. 273, although the decision in that case was reversed (2 N. Y. 408) upon a fact distinguishing that case from this. The defendants can only prevail in their claim of right to recover interest from May, 1886, upon the special agreement relating to that matter.

The defect in the vendor's title necessarily postponed for many years beyond the contemplated period the consummation of the pro-

posed sale. The conveyance, the assuming of the absolute obliga-
tion to pay the $125,000, and the giving of the note and mortgage
therefor, as well as the determination of the very essential fact
whether the purchase was to be made at all, were necessarily sus-
pended or postponed, and became performable only after the lapse
of six years. Now performance has become possible, and neither
party resists the performance of the contract, although they are in
contention as to how it should be performed or enforced. But the
impossibility, and necessary, but unexpected, postponement, of the
performance of the contract in these particulars has also rendered
it impossible to observe and enforce, consistently with the original
and paramount intention of the parties, (as to the performance by
both parties being substantially contemporaneous,) the provision
that the purchaser's note for $125,000 should draw interest from
May 1, 1886, payable semiannually. *Birch* v. *Joy, supra.* The
language of Lord Chancellor St. Leonards in the case cited as to the
effect of the unexpected delay in the performance of the contract,
and the principle of the decision in that case, are applicable in this.
See particularly page 598 *et seq.* If the plaintiff is now required
to pay interest on the $125,000 from May, 1886, it is because the
literal expression in the contract in that particular remains un-
affected and strictly enforceable; notwithstanding the lapse of time,
and the impossibility of carrying out the intention of the parties
within the reasonable period originally contemplated. To thus hold
the purchaser to perform strictly the letter of the agreement on his
part, while the just as binding obligation of the vendor, in considera-
tion of which that of the vendee was undertaken, could not be and
was not performed according to the intentions of the parties, would
not be equitable. The same reason—that the letter of the agree-
ment in respect to payment must be strictly enforced—would lead
to results plainly unjust and at variance with the intention of the
parties. It would have enabled the vendors to have recovered from
the vendee the successive installments of interest on $125,000 every
six months after May, 1886, and at the expiration of five years after
the making of the contract to have recovered the principal sum of
$125,000, notwithstanding the fact that the vendors' title was still
confessedly doubtful and in litigation, and the express right of the
vendee, at his election, to abandon the contract and recover back

the earnest money, $5,000, remained unimpaired; and this, too, while the vendors remained in possession, unable to convey, and receiving the rents and profits. The provisions that the note should be payable within five years after the making of the contract, and that the interest should be payable semiannually, were as absolute and obligatory as that providing that the note should draw interest from May 1, 1886. Of course, there could have been no such right of recovery, for the provisions just referred to were dependent or conditioned upon the contract being performed by the vendors by the conveyance of, or ability to convey, a good title before the other party should become obligated to make such payments, or even to assume an absolute obligation to pay. The parties did not intend any such thing. But neither when they entered into this contract did they intend that the performance of it should remain in abeyance for many years, the vendors remaining in possession, unable to convey; the vendee out of possession, unable safely to enter into possession or to improve the property, and uncertain whether the sale could ever be completed. The agreement to pay interest from May, 1886, was not made in reference to or in contemplation of such an outcome of the contract. Even if it were now possible to enforce that feature of the agreement according to its letter, it could not be done without doing violence to the paramount controlling intention of the parties that the performance of the contract on both sides should be substantially contemporaneous. That paramount intention may and should be carried into effect.

The case is distinguishable from those where the parties have stipulated for interest during any delay in the performance of the contract in terms indicating that the stipulation for interest was made with reference to such delay. In this case the provision respecting interest was not made with reference to any possible delay in the completion of the contract. On the contrary, it related merely to the agreed postponement of the payment of a part of the purchase price for an optional period of five years after the making of the contract. The case is also to be distinguished from those where the vendee enters into and enjoys the possession of the property.

The same reasons which now forbid the enforcement of the clause respecting interest forbid also the enforcement of the provision re-

specting the payment of taxes while the vendors remained in the possession and enjoyment of the use of the property, unable to convey it, or to surrender a safe possession to the other contracting party. *Carrodus* v. *Sharp*, 20 Beav. 56.

It is different, however, as respects the local city assessments charged upon the property by reason of the benefits (presumably permanent) which it has derived from public improvements. These are lasting benefits to the property, which the plaintiff, rather than the defendants, will enjoy. It is advisedly conceded by the respondents that the plaintiff ought not to have been allowed anything on account of such local assessments.

The order for judgment in the district court will be modified by disallowing the claim of the plaintiff in respect to such special assessments. The order appealed from is affirmed except as thus modified.

(Opinion published 56 N. W. Rep. 59.)