HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS AND MARTIN P.
GREY, VICE-CHANCELLORS.

---

ALEXANDER B. SIMONDS

*v.*

THE ESSEX PASSENGER RAILWAY COMPANY.

[Filed November 9th, 1898.]

1. Where, pending delivery of deeds under land contracts providing for payment on delivery but silent as to possession, the purchaser, consenting to the vendor's delay in executing the deeds, takes possession and erects buildings, equity will charge him interest on the unpaid price.

2. Where a purchaser took possession under a land contract that did not provide for possession or for interest on deferred payments, and a creditor of the vendor acquired title to the land subject to the contract, under a judgment sale, the latter could enforce an equitable claim for interest only from the date of his purchase, since the vendor's equitable right to the value of the use of the deferred payment did not pass under the judgment sale.

3. A purchaser took possession and erected buildings under land contracts which provided for payment on delivery of deeds and that he should pay taxes, but contained nothing regarding possession or interest on a deferred payment. A dispute arose as to interest, and to facilitate the transfer and prevent further delay it was agreed that the deferred payment should be made and the deeds delivered, but that "the question whether [the vendor] is entitled to interest on said sum, and his right thereto, shall not be in any way affected by said conveyance and payment."—*Held*, that the vendor might afterwards have interest in a suit for specific performance.

On demurrer to bill.

*Mr. Edward Q. Keasbey*, for the demurrant.

*Mr. R. Wayne Parker*, for the complainant.

THE CHANCELLOR.

The bill alleges that on the 17th of April, 1884, the East Newark Land Company agreed in writing with Sylvester S. Battin to sell to him eight lots of land in East Newark for $3,400, $400 of which was to be paid upon the delivery of the contract and $3,000 upon the delivery of the deed. The deed was to convey the property in fee, free from all encumbrances, and was to be delivered upon thirty days' notice to Battin and on or before the 17th day of April, 1885. Battin was to pay all taxes and assessments levied upon the land after the date of the contract. He contracted in behalf of the Newark, Harrison and Kearney Horse Car Railroad Company. Upon the execution of the contract the last-named company took possession of the land and used it for stables which it erected thereon.

On the 29th day of April, 1886, the East Newark Land Company made another contract in writing with the Essex Passenger Railway Company to sell eight other lots for other $3,400, $400 of which was paid upon the delivery of the con-

tract and $3,000 was to be paid upon the delivery of the deed. The deed was to convey the property in fee, free from encumbrances, and was to be delivered on or before the 29th day of April, 1887. The Essex Passenger Railway Company was to pay all taxes and assessments levied upon the land after the date of the contract. In this contract there was no provision that notice of the delivery of the deed should be given. Upon the execution of the contract, the Essex Passenger Railway Company took possession of the land and used it for stables.

On April 6th, 1887, the Newark, Harrison and Kearney Horse Car Company transferred its entire property to the Essex Passenger Railway Company and at the same time Mr. Battin assigned to the last-named company his contract with the East Newark Land Company and his interests in the lands described therein. In November, 1887, before the deeds for the sixteen lots were delivered, a judgment was recovered against the East Newark Land Company under which, in December, 1887, all the lots in question, with other lands, were sold to the complainant. The judgment and sale were claimed by the Essex Passenger Railway Company to be subject to the contracts of sale.

At the times the contracts for the sale of the sixteen lots were respectively made the parties to them knew that the lots were encumbered by two mortgages from which the land company was to secure releases before the delivery of the deeds. Pending negotiations for such releases the fulfillment of the contracts was delayed from time to time by the consent of all parties and neither tender of the remainder of the moneys to be paid nor demand for the deeds was made, and during all the delay the railway companies remained in possession of the lots, enjoying the beneficial use of them.

In November, 1888, an arrangement was made to free the lots from the mortgages then in process of foreclosure, and it became desirable, in order to carry out the arrangement, to use the $6,000 that the Essex Passenger Railway Company was to pay upon delivery of the deeds to it, but the question arose whether the complainant should be paid interest upon the $6,000. It was not deemed wise to delay settlement with the mortgagee

until that question could be determined, and hence the following agreement was entered into between the complainant and defendant:

" Whereas, the Essex Passenger Railway Company are in occupation, under contracts for sale heretofore made with the East Newark Land Company, of sixteen lots, Nos. 349 to 364 inclusive, on the map of lands of said company, and it is desired not to embarrass the settlement of pending foreclosure litigation as to the land of said company by the question whether interest is payable on said contracts. It is therefore agreed by said railway company and Alexander B. Simonds that if said Simonds cause said lots to be conveyed to said railway company, free from the mortgages now existing on the same and of all encumbrances but taxes and assessments provided by said contracts to be paid by the purchasers, then the said railway company will pay to said Simonds the sum of six thousand dollars, and the question whether said Simonds is entitled to interest on said sum and his right thereto shall not be in any way affected by said conveyance and payment."

Afterwards, on December 18th, 1888, the mortgage liens were removed from the lots, the lots were duly conveyed by the complainant to the defendant, and the defendant paid the complainant $6,000, whereupon, at the foot of the agreement last mentioned, the following receipt was endorsed :

"Received six thousand dollars on delivering the deed of Alex. B. Simonds and release of Brinkerhoff, ex'r, in pursuance of above agreement, said deed and release accepted in like pursuance of said agreement."

The complainant now insists that, in virtue of the agreement of November, 1888, he is entitled to have the question whether he was entitled to interest on the $6,000 determined in this suit, as if he were asking that the railway company be compelled to specifically perform the contracts for the sale of the lots, and he prays that the defendant company may be decreed to account for and pay the interest upon the $6,000, and that he be decreed to have a lien upon the lots for the amount found to be due for that interest.

The bill is demurred to by the Essex Passenger Railway Company upon the ground that it does not present a case for equitable relief.

It is observed that although both the contracts provide that the vendees shall pay the taxes and assessments levied after the date of the contracts, they are silent both as to the possession of the land and as to interest upon the purchase-money.

No recovery of interest upon the $6,000 can be had at law, because the vendor's right to the $6,000 could not mature before the vendee should be put in default by due tender of deeds. *Fludyer* v. *Cocker, 12 Ves. 25; Stevenson* v. *Maxwell, 2 N. Y. 408, 414.* But when asked to enforce an agreement like those in question equity proceeds with reference not only to the rights of the parties under the agreement, but also with reference to the position the parties assume to each other after making the agreement and the equities that grow out thereof. Where, pending the execution of an agreement for the sale of land which does not provide for possession of the land, the vendee takes possession of the land, a court of equity, ordinarily, will charge him interest upon the unpaid purchase-money. "He proceeds," said Sir William Grant, master of the rolls, in *Fludyer* v. *Cocker, supra,* "upon the supposition that the contract will be executed, and therefore agrees that from that day he will treat it as if it was executed. The act of taking possession is an implied agreement to pay interest, for so absurd an agreement as that the purchaser is to receive the rents and profits, to which he has no legal title, and the vendor is not to have interest, as he has no legal title to the money, can never be implied." *Binks* v. *Rokeby, 2 Swanst. 222; Attorney-General* v. *Christ Church, Oxford, 13 Sim. 214; Birch* v. *Joy, 3 H. L. Cas. 565; Stevenson* v. *Maxwell, supra; Ashmore* v. *Evans, 3 Stock. 152; Lang* v. *Moole, 4 Stew. Eq. 413.* And it is held that this rule will be applied even though there be delay in the execution of the contract of sale by the vendor. *Ballard* v. *Shutt, 15 Ch. Div. 122; Stevenson* v. *Maxwell, supra.*

It has seemed to me to be difficult to reconcile the latter holding in this state with the case of *Ware* v. *Lippincott, 18 Stew. Eq. 220.* In that case Ware bought a lot of land from Evans for $158, and paying $100 of the purchase-money entered into possession and cut off and sold all the timber on the land.

When the $100 was paid Evans gave Ware a receipt in writing, which embodied the contract as follows : " The deed to be hereafter made to him and when delivered he is to give his note for fifty-eight dollars, additional."

After several years, during which there was neither tender nor demand of either deed or note, Ware sent his note for $58 to the heirs of Evans and demanded a deed, but they refused to accept the note and give the deed, and commenced a suit in ejectment to recover possession of the land, and thereupon Ware commenced a suit in equity for the specific performance of his contract with Evans, in which the prosecution of the ejectment suit was restrained by injunction. Upon the hearing of the case question arose whether Ware should pay interest upon the $58 during his occupancy of the land, and it was held in the court of chancery that he should. Upon appeal, however, the court of errors and appeals reached the opposite conclusion, but without any discussion of the equitable rule invoked in the present case. Its disposition of the case was this : "Had the defendants a right to demand from Ware, before they would deliver to him his deed, anything more than his note for $58 ? They certainly could not require of him more than Evans could have done if alive. Evans, at any period prior to his death, would have been compelled to make a deed upon Ware's tender to him of his note for $58. Evans could not have required interest on that sum. Interest was an incident not of the contract of sale but of the note. The note had no existence in fact because it had not been obtained, and none in equity because it had not been demanded. Evans, in his lifetime, had it in his power to fix a period when interest should begin to run, either by obtaining or demanding the note from Ware." The decision rests upon the failure to demand the note, the thing bargained for, the written promise to pay money from which, when had, interest would proceed. It was deemed that without demand for it the note would not have equitable life, an essential to the recovery of interest. It was evidently intended that the decision of that case should be controlled by the neglect of Evans and his heirs. That puts the case at variance with the

decisions which hold that the delay of the vendor will not prevent the application of the general equitable rule, but I do not understand that it disapproves of the rule itself. The principle that underlies the allowance of interest in cases of the nature considered is that specific performance, being a discretionary equitable remedy, should be meted out upon equitable principles, and in its administration exact that which should be done in fairness and good conscience. It is inequitable that one party to a contract, in absence of agreement to that effect, shall have both rents and profits of the lands and the value of the purchase-money. If he is brought into a court of equity with respect to the enforcement of the contract, he must do that which conscience requires—keep the profits of the land he wants and surrender the value of the money withheld. In the case I now consider the vendees took possession of the lands and built upon them, so that they became as productive as was intended when the contracts for sale were executed. For the time being they did not actually need the legal title. They consented to the delays occasioned by the difficulties of the vendors and when it became possible to secure the legal title free from encumbrances the defendant railway, then holding the rights of the vendees, paid the $6,000 to be paid upon the delivery of the deeds, and upon suggestion of the question whether it should not pay the complainant interest, agreed that that question should remain unaffected by the payment and delivery and acceptance of the deeds.

It is observed that in this case that which was withheld was money and not a note or a mere promise to pay money. The delay was agreed to so that fault did not attach to either party because thereof. The case thus differs from *Ware* v. *Lippincott.* It appears to be within the plain rule that the vendee shall not have both the profits of the land and the value of the money.

At this point it is remembered that the contracts were made with the East Newark Land Company, and that that company did not assign its rights under them to the present complainant. The complainant, in December, 1887, became the owner of the lands subject to the contracts in a proceeding *in invitum*—a sale

under a judgment. Prior to that sale the land company was the party deprived of both the profits of the land and the value of the money. Its equitable right to the value of the money, so long as it owned the land, did not pass with the land, by the judgment sale, to the complainant. Hence, I think that the complainant's equity to have interest is limited to the time during which he was deprived of the use of the money—that is, from December, 1887, to the date of the payment of the money, in December, 1888.

Under the circumstances of this case I think that the present action will lie. At the time the $6,000 was paid and the deeds were delivered dispute with reference to the interest had arisen. The complainant could then have commenced suit for specific performance, and, in that suit, could have claimed interest. This situation was realized by both the parties, and hence they stipulated to the effect that payment of the money and delivery and receipt of the deed should not affect any question as to right to interest. The stipulation contemplated not only legal right but the right that could be enforced in a suit in equity for the specific enforcement of the contracts. Because of this stipulation I think that this action lies as a suit for specific performance to complete the performance to the extent the court would have required if a suit for that purpose had been begun when it was avoided by the stipulation. What the exact sum to be paid will be and whether that sum will be charged on the lands, are questions to be determined at final hearing.

The demurrer will be overruled, with costs.