A final decree was entered in this cause on February 4th, 1947, in conformity with my conclusions reported in 139 N.J. Eq. 171;50 Atl. Rep. 2d 488. Upon appeal by the *Page 68 
defendant, the decree was affirmed. 141 N.J. Eq. 364;57 Atl. Rep. 2d 365.
The decree directed the defendant to execute and acknowledge in due form of law and deliver to the complainant on February 25th, 1947, within the hours specified, a good and sufficient general warranty deed of conveyance, free and clear of all encumbrances, for the lands and premises therein described, and required the complainant upon receipt of the deed to "pay to said defendant the sum of $15,000, the agreed purchase price for said lands and premises, subject to the usual adjustments to be made as of February 28th, 1946, after deducting therefrom" the costs and counsel fee awarded to the complainant.
I recall that upon the application for the settlement of the terms of the decree the subject of adjustments incident to the consummation of the conveyance was discussed before me by counsel, and before the entry of the decree I inserted by interlineation the words "subject to the usual adjustments to be made as of February 28th, 1946."
A fulfillment of the terms of the decree is now to be accomplished and in determining the several adjustments, counsel are in discord in respect to the equitable obligation of the successful complainant-vendee to pay interest on the purchase price, which has remained unpaid during the period of litigation.
The decree of this court so affirmed by the court of last resort must be regarded as final and unalterable. In the present situation I can only express for the Chancellor its proper interpretation. I can readily conjecture that a charge of interest on the purchase price is not a "usual adjustment" in the voluntary consummation of a sale of real estate in the absence of some relative agreement. However, that which is unusual in some circumstances may well be usual in other and different circumstances. Hence, to determine whether a course of procedure is normal and customary, one must be aware of the character of the transaction and its surrounding circumstances.
In the present case I indubitably employed the expression "usual adjustments" to denote those adjustments which would *Page 69 
normally be made in view of the equities of the parties in the same or similar circumstances to those of the cause in which the decree was advised. Such a purpose is particularly methodical in suits for the specific performance of contracts. In such causes hardships are not to be visited upon either party.
In cases in which the performance of a contract for the sale of real estate has been postponed by reason of extended litigation, the equitable right, vel non, to interest on the unpaid purchase price cannot be classified as a strange, abnormal, and unpredictable subject of equitable adjustment.
In all such instances the usual adjustments are those which are responsive to the equities of the respective parties in the given case, and so, inveterate and invariable adjustments cannot be devised which are applicable to all such cases.
Some of the factors of major significance which occur to me to be pertinent to this and comparable cases are: (a) The nature of the resistance exerted by the adverse vendor. Was his default purely capricious and without reasonable justification — was it arbitrary, willful, or malicious? (b) Has the vendor or the vendee enjoyed the possession or otherwise received the rents, issues, and profits of the property during the progress of the litigation? (c) Which party has defrayed the maintenance costs during that period? (d) If the vendee has been in possession, what is the comparison between the value of the use of the premises and the amount of interest demanded on the unpaid purchase price? (e) Did the vendee deposit in court or otherwise appropriate the purchase price to the immediate use of the vendor, or has he meanwhile retained it for his own use?
Here, the complainant became a tenant of the premises by virtue of a lease dated February 29th, 1944, in consideration of the payment of a monthly rental of $250. The covenant of the defendant-lessor to convey the demised premises to the complainant was embodied in the lease in the fashion of an option which the complainant-lessee duly exercised. I am now informed that upon the refusal of the defendant-vendor to submit to the terms of the option, the complainant-vendee has remained in possession of the demised premises *Page 70 
and also discontinued the payment of rent. See Bancone v.Drovan, 11 N.J. Mis. R. 198; 165 Atl. Rep. 287. The defendant has discharged the maintenance costs for such items as taxes and insurance, for which the complainant does not deny the right of the defendant to reimbursement, and it is conceded that the complainant has retained and held fast to the purchase price.
It is an elementary principle in our jurisprudence that in equity a contract for the sale of land is recognized, for most purposes, as if it were specifically executed and performed in accordance with its terms. The consequential deduction is that the purchaser becomes the equitable owner of the land and the vendor the equitable owner of the purchase money. Haughwout v.Murphy, 22 N.J. Eq. 531, 546; Brown v. Norcross, 59 N.J. Eq. 427; 45 Atl. Rep. 605. A type of reciprocal fiduciary relationship between the vendor and vendee is originated by the agreement of sale. King v. Ruckman, 24 N.J. Eq. 298, 301;
see, also, opinion on affirmance, Id. 556.
It was, in truth, my remembrance of the decision in Hall v.Ely, 91 N.J. Eq. 92; 108 Atl. Rep. 370, however then momentarily vague in my recollection, that induced me to insert in the final decree the interlineation concerning the adjustments. In that case, in which the vendor sued for specific performance, Mr. Justice Parker speaking for the Court of Errors and Appeals stated: "Being in possession, the vendee received the benefit of the land, and, on the other hand, vendor who did not receive the purchase money is entitled to interest on it from the date when it should have been paid in cash or mortgage."
In Brown v. Norcross, supra, in which the vendor was the complainant, the Vice-Chancellor declared: "The vendee, if holding possession of the land, is entitled to the rents and profits thereof, and the vendor, under such circumstances, is entitled to receive interest upon the unpaid portion of the purchase-money."
In Joseph v. Skehan, 103 N.J. Eq. 328; 143 Atl. Rep. 442,
the suit was prosecuted by the vendees. The vendor retained possession of the premises consisting of vacant land *Page 71 
and had the benefit of a portion of the purchase price. It was resolved that the complainants, having been "deprived of both property and the money they had paid," were entitled to interest on the portion of the purchase price from the time it was advanced until the tender of the proper title papers.
The apportionment of taxes, interest, insurance or rents was a subject implicated in the decision in Moran v. Fifteenth WardBuilding and Loan Association, 131 N.J. Eq. 361; 25 Atl. Rep.
2d 426, wherein Vice-Chancellor Bigelow remarked: "If interest on the purchase price is meant the price is not payable until the deed is delivered. Ackley v. Richman,10 N.J. Law 304. And no interest runs until then or until the vendee is putin possession." (Italics mine.) The Ackley Case exemplifies the strict rule at law. The possession in the vendee is the equitable element.
An acquaintance with the reported adjudications discloses that the right in equity of a vendor to interest upon the unpaid purchase money is distinguished from such right at law.
At law and in the absence of a contractual provision to the contrary, the vendor's right to the purchase price does not ordinarily mature until the vendee is placed in default by a due and proper tender of the deed.
Equity, however, when asked to enforce the performance of an agreement of this character, proceeds not only with a recognition of the contractual rights of the parties, but also with an observance of the position assumed toward each other by the respective parties during the period of hostilities and the resultant equities.
It becomes immediately noticeable from an examination of the authorities that in such matters in courts of equity, heavy significance is ascribed to the fact of the intermediate possession of the property and the manner of appropriation of the purchase money. Indeed Judge Fry in his volume concerning the specific performance of contracts (5th ed., p. 658, §§ 1445 etseq.) has announced that: "It follows from the principles already stated and discussed in this chapter that generally, in the absence of stipulation, a purchaser in possession of the estate which is the subject-matter of the contract must pay interest on the unpaid purchase-money from *Page 72 
the time when his possession under the contract commenced until completion.
"The rule that the purchaser in possession shall pay interest on the unpaid part of the purchase-money will be applied even in cases where the delay arises from the neglect of the vendor, and the purchaser makes no actual profit out of the land. `The act of taking possession,' said Grant M.R., `is an implied agreement to pay interest: for so absurd an agreement as that a purchaser is to receive the rents and profits to which he has no legal title, and the vendor is not to have interest, as he has no legal title to the money, can never be implied.'"
The foregoing general rule was agreeably respected by the Chancellor of this court in Lang v. Moole, 31 N.J. Eq. 413,
wherein he remarked: "In equity, the vendor under such an agreement as that upon which this suit is brought, is the owner of the purchase-money, and the vendee is the owner of the land; and in general, the latter is entitled to an account of the rents and profits, and the former is entitled to interest. Where the purchaser is in possession, equity will in general require him to pay interest on the unpaid purchase-money. The parties may, indeed, control the matter by their stipulations, but so strongly does equity hold to the principle that a purchaser in possession shall pay interest, that it will look at any agreement which appears to prevent the application of the rule, in the light of the general principle, and since it interposes only according to conscience, will refuse to compel execution of it where it grossly violates the rule."
Approximately a score of years elapsed when, in Simonds v.Essex Passenger Railway Co., 57 N.J. Eq. 349, 353;41 Atl. Rep. 682, another Chancellor of our court borrowed in part the words of Fry and additionally furnished the exact phraseology for the authorship of the text of 35 Am. Jur. 774 § 347. He stated: "But when asked to enforce an agreement like those in question equity proceeds with reference not only to the rights of the parties under the agreement, but also with reference to the position the parties assume to each other after making the agreement and the equities that grow out thereof. Where, pending the execution of an agreement for the sale of land which does not provide for possession of the *Page 73 
land, the vendee takes possession of the land, a court of equity, ordinarily, will charge him interest upon the unpaid purchase money. `He proceeds,' said Sir William Grant, master of the rolls, in Fludyer v. Cocker, supra, `upon the supposition that the contract will be executed, and therefore agrees that from that day he will treat it as if it was executed. The act of taking possession is an implied agreement to pay interest, for so absurd an agreement as that the purchaser is to receive the rents and profits, to which he has no legal title, and the vendor is not to have interest, as he has no legal title to the money, can never be implied.' * * * And it is held that this rule will be applied even though there be delay in the execution of the contract of sale by the vendor."
"The right to or accountability for rents and profits is frequently treated as correlative with, or dependent on, the liability for, or payment of, interest on purchase money, the one being ordinarily treated as equivalent to the other, and the cases proceeding on the principal that, unless there is some agreement or equitable consideration to the contrary, one party should not have both the property and the purchase money or the proceeds thereof without accountability for either." 66 C.J.1042 § 796.
"Where, pending the execution of an agreement for the sale of land which does not provide for possession of the land, the vendee takes possession of the land, a court of equity ordinarily will charge interest upon the unpaid purchase money. This is true although there is delay in the execution of the contract of sale by the vendor. In equity the vendor is ordinarily entitled to interest where the purchaser is let into possession and no provision is made in the contract for a delay in its execution, although the failure to complete the contract is due to the fault of the vendor, and in such a case in decreeing specific performance the purchaser is as a general rule to be charged with interest on the purchase money from the time it should have been paid if the contract had been carried out as contemplated by the parties, it being deemed inequitable that the purchaser should enjoy the benefit of the possession without liability for interest." 55 Am. Jur. 774 § 347.
"In applying equitable principles to the allowance of interest, due consideration will be given to the question as to which of the parties has been in possession of the subject-matter of the contract, especially where such possession has been beneficial. Ordinarily, neither party should enjoy the possession and use of the subject-matter of the contract and also the purchase money. Hence the interest on the purchase money will be adjusted in a manner to equalize the value of the possession of the property, unless the equities of the particular transaction require the application of a different rule." Annotation, 75 A.L.R. 316,317. *Page 74 
In a case conspicuously similar in pertinent respects to the present cause, the Supreme Judicial Court of Massachusetts inSanders v. Bryer, 152 Mass. 141; 25 N.E. Rep. 86, held: "The lessee, having remained in possession and enjoyed all the rents and profits after tendering the agreed purchase price, is liable for interest thereon from the date of tender, when he did not set it apart for the use of the vendors but continued to use it himself."
And so, in the absence of some incompatible equity, it seems to be the predominant weight of judicial opinion in courts of equitable jurisdiction that in the ordinary case to accord the purchaser the beneficial enjoyment of the possession of the property without liability for any interest on the retained purchase money, is inequitable. Atchison T. S.F. Railroad Co.
v. Chicago W.I. Railroad Co., 162 Ill. 632; 44 N.E. Rep. 823,828, in which the early precedents are cited.
I cannot justly reprobate the desire of the defendant to test in this court the validity of the option agreement, nor frown upon the inclination of the defendant to have the decree reviewed by the appellate court. Yet for immediate concern, I cannot discharge from my mind the observation which I expressed in the memorandum of my decision: "The complainant opportunely exercised the option and initially the defendant manifested its intention to perform. Subsequently, the president of the company announced the declination of the defendant to consummate the conveyance, specifying two reasons: the one, that his wife deemed the price to be inadequate, and that accordingly she was disinclined to execute the requisite deed in her capacity as secretary of the company; the other, that a sale of the demised premises would result in a disadvantageous division of his (the company's) real estate holdings in that locality."
In the light of the established equitable principle and the circumstances of the present case, equity will be achieved by an allowance to the defendant of interest at the rate of three per centum per annum to be computed from March 1st, 1946. *Page 75