Norbert AMANN, Plaintiff and Appellee,

v.

John FREDERICK and Cecelia Frederick, Defendants and Appellants.

Civ. No. 9329.

Supreme Court of North Dakota.

Aug. 18, 1977.

Maurice R. Hunke, Dickinson, for plaintiff and appellee.

Alfred C. Schultz, of Sperry & Schultz, Bismarck, for defendants and appellants.

VOGEL, Justice.

This is an appeal from a judgment of the district court ordering specific performance of an option to convey 400 acres of land.

We affirm.

On September 28, 1971, Norbert Amann entered into an agreement with John and Cecelia Frederick. The agreement was unartfully drawn by a banker. It provided that an option agreement would be entered into as to 400 acres of land, and that the option agreement as to the 400 acres was contingent upon the execution of an option to buy an additional 720 acres with funds to be provided in part by a Farmers Home Administration real estate loan. It further provided that a lease was to be given on the 400 acres for five years, starting in 1972, with lease payments at eight dollars per acre per year, and that the lease would include a five-year option to purchase the 400 acres at a price of $40,000, including 50 percent of the mineral rights.

On the same day, September 28, 1971, the same parties executed an option on a form provided by the Farmers Home Administration for the sale and purchase of the 720-acre tract, and a separate option to purchase farm machinery at a price of $18,250. Parenthetically, we mention that the reason for the separate agreements as to the 720-acre tract and the 400-acre tract apparently was that the lending agency had limits which would be exceeded by the purchase of all the land in one transaction.

On April 3, 1972, the parties entered into a farm lease on the 400-acre tract, drawn by the same banker on a printed form, and containing this language:

"This is meant to include five crop seasons or the crops from 1972, 1973, 1974, 1975 and 1976.

"This lease includes an option to purchase during the time of this lease for a price of $40,000.00 with 50% of the mineral rights to go with this sale."

On December 22, 1975, an attorney for Amann notified the Fredericks in writing that Amann was exercising his option. Instructions were given as to bringing the abstract up-to-date and execution of a deed enclosed with the letter. The Fredericks refused to convey and asserted then, and assert now, various reasons for such refusal.

The allegations of the defendants in this court can be summarized as follows:

*As to formation of a contract:*

1. There was no "meeting of the minds" of the parties for various reasons, including those mentioned in 2 to 5 below.

2. There was no consideration for the option.

3. The rental was unconscionably low.

4. There was a mutual mistake as to the mineral acres owned by the Fredericks, and the Fredericks were allowed to remove some old buildings which were part of the real estate.

5. The lease-option was not notarized.

*As to admission of evidence:*

6. The trial court erred in the admission of Exhibit 1, the option agreement of September 28, 1971, first described above.

7. Misleading evidence as to notations on checks was received.

*As to tender :*

8. Amann failed to tender performance when he purportedly exercised his option.

*As to payment of rent after exercise of option :*

9. Since the lease-option does not provide otherwise, Amann is obligated to pay rent for the fifth year, even after he exercised his option during the fourth year of the agreement.

We will discuss these points in the order stated.

1. It is variously alleged that Mr. Frederick cannot read and Mrs. Frederick did not read the various papers they signed; that they thought they were signing only a lease; and that they were unaware of the fact that they did not own all the minerals under the land.

There was evidence which would justify nonreliance by the court upon these statements. The evidence showed that all three of the parties went to the banker together, and the instrument was apparently drawn up in their presence and signed in the presence of the banker, who witnessed it. It is somewhat hard to believe that the contents of the instrument were not discussed. At any rate, there is more than adequate evidence to justify the conclusion of the trial judge that the contract was based upon mutual assent.

■ The invocation of the shorthand expression "meeting of the minds" is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract. It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties. As was said by Brian in *Yearbook*, 17 Edward IV, 1,

> "It is trite learning that the thought of man is not triable, for the devil himself knows not the thought of man."

And, as Oliver Wendell Holmes, Jr., said in *O'Donnell v. Clinton*, 145 Mass. 461, 14 N.E. 747 (1888), and Justice Cardozo quoted in *Sokoloff v. National City Bank*, 239 N.Y. 158, 145 N.E. 917, 920, 37 A.L.R. 712 (1924):

> "Assent, in the sense of the law, is a matter of overt acts, not of inward unanimity in motives, design, or the interpretation of words."

See also Restatement, Contracts, 71 and 233.

Professor Williston sums it all up by saying that the term "meeting of the minds" is a "familiar cliché, still reëchoing in judicial dicta," and that it is a nineteenth-century expression which seems to be contrary to the rule "long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent" as the law requires. Williston on Contracts, 3d Ed., § 22.

■ We are satisfied that the circumstances of the signing of the lease agreement show a sufficient manifestation of assent to the terms of the lease-option by all the parties and that they are bound by it.

■ 2. As to the claim that there was no consideration for the option, there are two sufficient answers. One is that there was evidence by Amann, not disputed by Mr. Frederick (who said he "did not recall"), that the parties discussed the amount of rent to be paid and fixed a figure based upon the going rate of interest on savings (6 to 6½ percent) and the amount of real estate taxes (up to one dollar per acre), which made a total of approximately seven dollars per acre on each $100 acre, and that the additional one dollar, approximately, of the eight-dollar-per-acre rental fee was consideration for the option. The second sufficient answer to the contention is that consideration for an option can be supplied by the consideration for a lease in the same instrument. *Dole v. Hansen*, 238 N.W.2d 58 (N.D.1975), n. 1 at p. 61; *Re v. Wells Fargo Bank*, 269 Cal.App.2d 783, 75 Cal.Rptr. 367 (1969); *Waites v. Miller*, 244 Mich. 267, 221 N.W. 171 (1928).

3. There is ample evidence to indicate that the rental was not unconscionably low and that the parties agreed upon the rental in an arm's-length transaction. The Fredericks offered evidence as to one or two cash-rental agreements of other real estate in the vicinity of the leased land involving higher payments, but the testimony was far from specific and the amount of land under cultivation in the tracts being compared was not stated. Of course, the amount of land under cultivation is a very material factor in determining the amount of rent.

4. The Fredericks' assertion that they are entitled to set aside the contract because they were unable to deliver 50 percent of the mineral acres, as they agreed to do, is somewhat puzzling. It is difficult to see how they could take advantage of the deficiency in the amount of property they had agreed to convey. Similarly, they cannot assert as a reason for setting aside a contract that they were permitted by the optionee to remove buildings which constituted part of the real estate they had agreed to convey.

At any rate, the requirement that the conveyance include 50 percent of the minerals has been waived by Amann, who declared in open court that he would accept 50 percent of whatever minerals were owned by the Fredericks, and he has also waived the taking of the buildings from a portion of the land. A buyer may always waive portions of contracts in his favor. Cases so holding as to provisions of option contracts include *Torelle v. Templeman*, 94 Mont. 149, 21 P.2d 60 (1933), and *McCaleb v. Wyatt*, 257 S.W.2d 880 (Tex.Civ.App.1953).

5. As between the parties, it is immaterial that an instrument in writing subscribed by the parties and affecting real estate is not acknowledged. *Adams v. Little Missouri Minerals Assn.*, 143 N.W.2d 659 (N.D.1966); *Bumann v. Burleigh County*, 73 N.D. 655, 18 N.W.2d 10 (1945).

6. The Fredericks allege that the court erred in admitting into evidence Exhibit 1, the first option agreement, since it expired when the second agreement was entered into and was not mentioned in the complaint. Of course, the complaint need not (and should not) mention all the evidence to be presented at the trial. The trial court has the discretion to receive in evidence all documents involved in a series of transactions, even though the lawsuit itself is based upon a violation of only a later document in the series. The former may very well be explanatory of the latter. See N.D.R.Ev. 402 and 106.

7. The Fredericks also complain that Amann testified as to the purpose for which he gave Mr. Frederick various checks, and did so in such a manner as to indicate that he was reading notations from the checks, whereas the checks either bore no such notations or some of the notations were added after the checks had been canceled and returned to him by the bank. The evidence discloses that Amann readily admitted that some of the notations might have been added after the checks were returned and that he and his attorney promptly agreed that copies of the bank's photographs of all the checks, showing their condition at the time they were negotiated through the bank, might be presented as a delayed exhibit. This was done.

All of this goes only to the weight of the evidence, not to the admissibility of the checks.

8. It is alleged that Amann failed to tender the $40,000 due upon his exercise of the option. The letter from his attorney stated a willingness to pay the money promptly, and that funds with which to do so were available, upon execution of a deed and presentation of an abstract of title showing good title. The evidence indicates that the Fredericks flatly refused to convey, and did not mention a failure to tender the money as a reason for the refusal. Under the circumstances, it would have been futile to proffer the money, and our law does not require that a buyer perform a futile act when the seller has refused to perform. *Foster County Implement Co. v. Smith*, 17 N.D. 178, 115 N.W. 663 (1908);

*Gassert v. Anderson,* 201 Minn. 515, 276 N.W. 808 (1937); *Stanley v. Pilker,* 40 S.D. 403, 167 N.W. 393 (1918).

See also Section 9–12–17, N.D.C.C., which provides:

"The thing to be delivered, if any, need not in any case actually be produced upon an offer of performance unless the offer is accepted."

9. Finally, the Fredericks assert with great vigor that they are at least entitled to rental for the fifth year, even though the option was exercised during the fourth year. They assert that the rent is due by the terms of the contract even though the option, included in the same contract, was exercised before the rent was due.

The fact that this contention is a novel one does not necessarily mean that it is untenable. However, we do not agree with it.

■ When the optionee exercises his option, he then becomes the owner of the real estate. As the owner of the real estate, he is entitled to collect the rents on the property. If he still had an obligation to pay rent, it would be an obligation to pay the rent to himself, which would certainly seem to be a superfluous action. However, no such circuity is necessary in settling the question.

Section 47–04–26, N.D.C.C., provides:

"All covenants contained in a grant of an estate in real property, which are made for the direct benefit of the property or some part of it then in existence, run with the land. Such covenants include covenants:

"1.   .   .   .
"2.   .   .   .
"3.   .   .   .
"4.   For the payment of rent, taxes, or assessments upon the land on the part of a grantee."

■ Under general principles of merger, it has been held in other jurisdictions that a tenancy for years merges in the freehold and is extinguished when the tenancy and the freehold estate vest in the same person at the same time. The cases are collected at 143 A.L.R. 93, 124. Upon exercise by a lessee of an option to purchase, the lessor is no longer entitled to rent in the absence of an express stipulation in the lease so providing. *Cities Service Oil Co. v. Viering,* 404 Ill. 538, 89 N.E.2d 392, 13 A.L.R.2d 1448 (1949). Once the option to purchase is exercised, the relationship of landlord and tenant is terminated and the relationship between the parties becomes that of vendor and vendee. *Cities Service Oil Co. v. Viering, supra; Gassert v. Anderson, supra; Rosenthal v. Shapiro,* 333 Mich. 302, 52 N.W.2d 859 (1952); *Mauzy v. Elliott,* 146 Neb. 865, 22 N.W.2d 142 (1946).

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.