LaDonna SCHWARTING, individually and as Personal Representative of the Clark Schwarting Estate, Plaintiff and Appellee,

v.

LeRoy H. SCHWARTING and Marie Schwarting, Defendants and Appellants.

Civ. No. 9944.

Supreme Court of North Dakota.

Oct. 5, 1981.

Richard P. Rausch, of Rausch & Rausch, Bismarck, for plaintiff and appellee.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for defendants and appellants.

VANDE WALLE, Justice.

LeRoy and Marie Schwarting appealed a judgment from the district court of Morton County ordering them to specifically perform under an option contract. We affirm.

LeRoy and Marie were the parents of Clark Schwarting and signed the option contract as the sellers. Clark and his wife, LaDonna Schwarting, signed as buyers. The option was to last for 12 months. During that time Clark died and LaDonna attempted to exercise the option. LeRoy and Marie refused to convey the property because they believed that the option could have been exercised only by Clark and only then if he had received a loan from the Farmers Home Administration (FmHA). The trial court found that the option included LaDonna as an optionee and that it did not condition her ability to accept upon an FmHA loan.

Three issues have been raised:

1. Was LaDonna an optionee under the option contract?

2. Did the option contract limit the source of the loan to the FmHA?

3. Did the trial court err when it refused to admit parol evidence to add terms to the option contract?

Because this appeal involves the construction of a contract and the admissibility of parol evidence we first look to our prior decisions which considered these subjects.

"If the parties' intentions in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide." *Park View Manor v. Housing Authority*, 300 N.W.2d 218, 224 (N.D.1980). "The best evidence of the parties' intention, of course, is the language of the deed itself, and therefore, the language of the writing alone, if clear and explicit, governs the interpretation of the parties' intent." *McDonald v. Antelope Land and Cattle Co.*, 294 N.W.2d 391, 394 (N.D.1980). The general rule is that "parol evidence is inadmissible to vary or contradict the terms of a written contract between the parties to the contract." *Dardis v. Eddy Brothers*, 223 N.W.2d 674, 679 (N.D.1974). If, however, "an ambiguity exists in a contract, parol evidence is admissible to explain existing essential terms or to show the intent of the parties." *Atlas Ready-Mix of Minot v. White Properties*, 306 N.W.2d 212, 220 (N.D.1981). When an ambiguity exists the court "must interpret the language so as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as that intention is ascertainable and lawful." *McDonald, supra*, 294 N.W.2d at 394. In construing ambiguous terms it is "proper for the court to refer to the circumstances under which it [a purchase contract] was made and the matters to which it related." *Kruger v. Soreide*, 246 N.W.2d 764, 768 (N.D.1976). "The question of whether or not a contract or the terms of a contract are clear and unambiguous is a question of law." *Atlas Ready-Mix, supra*, 306 N.W.2d at 220. Language in a contract is ambiguous when "the language is subject to more than one construction" [*McDonald, supra*, 294 N.W.2d at 394], or "when good arguments can be made for either of two contrary positions as to the meaning of a term in a document" [*Atlas Ready-Mix, supra*, 306 N.W.2d at 220]. "But once it is determined that an agreement is ambiguous and that the parties' intent cannot be ascertained from the writing alone, reference must then be made to extrinsic evidence, and those questions in regard to which extrinsic evidence is adduced are questions of

fact to be determined by the trier of fact." *Thomas C. Roel Associates, Inc. v. Henrikson*, 295 N.W.2d 136, 137 (N.D.1980).

Because the case was tried without a jury, the trial court admitted testimony by LeRoy which explained his intentions about the option. LaDonna was allowed a standing objection to the testimony. At the end of the trial the court decided that the parol-evidence rule barred the testimony and that even if the testimony were admitted it was insufficient to show that additional terms existed which were not part of the option agreement. As discussed above, whether or not parol evidence should be admitted is a question of law. *Atlas Ready-Mix, supra*, 306 N.W.2d at 220. When parol evidence is admitted to explain ambiguous matters in the agreement it is up to the trier of fact to determine the effect of the evidence upon the ambiguity. *Thomas C. Roel Associates, Inc., supra*, 295 N.W.2d at 137. Conclusions of law are fully reviewable by this court [*Park View Manor, supra*, 300 N.W.2d at 224], while findings of fact are not set aside unless clearly erroneous [*Diemert v. Johnson*, 299 N.W.2d 546, 548 (N.D.1980)].

According to the testimony the option contract was prepared by LeRoy's attorney on a form supplied by the FmHA. The option contract states that the seller offers to sell to, and then there is a blank line under which appears "(hereinafter called the 'Buyer')." In this blank are typed "LeRoy H. Schwarting and Marie Schwarting, husband & wife, of Box 6, New Salem, North Dakota 58563." At the end of the option contract LeRoy and Marie signed on lines indicating them to be the "(Seller) (Husband)" and "(Seller) (Wife)." No one disputes that the instrument was to be an option contract; that LeRoy and Marie were to be the sellers; or that it was a mistake to list LeRoy and Marie as the buyers on the first page of the instrument. The question is: Whose name should have appeared there—Clark's alone or Clark's and LaDonna's?

Section 9–07–04, N.D.C.C., requires that "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." We believe that it is possible to ascertain the intentions of the parties from the option agreement itself. Section 9–07–06, N.D.C.C., assists in ascertaining the intentions of the parties. It states that "the whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the other." At the end of the instrument in the spaces designated by the printed words "(Buyer) (Husband)" and "(Buyer) (Wife)" are the signatures of Clark and LaDonna. Under Clark's signature is typed "Clark Schwarting" and under LaDonna's signature is typed "LaDonna Schwarting." We agree with the trial court that the contract taken as a whole indicates that Clark and LaDonna were the intended buyers. Because the document itself permits us to ascertain the intention of the parties, Section 9–07–05, N.D.C.C., allows us to regard the real intention of the parties and disregard the erroneous parts of the writing, i. e., naming LeRoy and Marie the purchasers. There is nothing in the instrument which indicates that the real intention of the parties was to extend the option to Clark alone. The printed form provided space for the buyers' signatures. Typed in the space were the names of Clark and LaDonna. This is adequate evidence of the parties' intention. Extrinsic evidence is not needed. LeRoy's attempt to vary the parol-evidence rule with testimony that it was his intention to extend the option to Clark alone was correctly refused by the trial court. *Hook v. Crary*, 142 N.W.2d 140, 146 (N.D.1966), states: "The parol evidence rule, however, has never been relaxed to a point which will permit the introduction of testimony of the undisclosed intentions of a party *or his conclusions as to meaning of the language of an instrument*." [Emphasis added.]

The second issue is whether or not the option contract limited the source of the loan to the FmHA. We decide that it did not.

The option contained the following provision:

"2. This option is given to enable the Buyer to obtain a loan insured or made by the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (hereinafter called the 'Government'), for the purchase of said property. It is agreed that the Buyer's efforts to obtain a loan constitute a part of the consideration for this option and any downpayment will be refunded if a loan cannot be processed by FmHA or cannot be obtained from another source."

LaDonna eventually received a loan commitment from the Federal Land Bank. She reads the above provision "from another source" to mean that the loan could be obtained from any source. However, that phrase is only the last three words of an independent clause in the second sentence. The entire clause reads, "any downpayment will be refunded if a loan cannot be processed by FmHA or cannot be obtained from another source." LeRoy argues that the first sentence of the paragraph limits the option to a loan from the FmHA. However, the practical effect of that construction must be examined.

Does the language "and any downpayment will be refunded if a loan cannot be processed by FmHA or cannot be obtained from another source" state only the condition under which a downpayment would be returned? Such a construction renders the condition meaningless. If LaDonna made a downpayment and was unable to obtain a FmHA loan she could receive a refund of her downpayment only if her loan application was rejected by a second source. The key to interpretation of this agreement is determining the result if LaDonna obtained financing at the second source. LeRoy's interpretation would allow him to retain the downpayment because her application for a loan must be rejected before she could receive a refund of her downpayment. LeRoy's interpretation would also allow him to refuse to convey the property, because the option would be effective only if FmHA provided the loan. Because of the ludicrous results of LeRoy's interpretation the phrase must mean that the option is effective regardless of the source of the loan. We conclude that the disputed phrase is subject to only one construction and therefore is not ambiguous. Even if we were to decide that parol evidence should have been admitted the trial court, as the trier of fact, ruled that the testimony was insufficient to show that there were additional terms agreed upon which were not contained in the agreement. Upon reviewing the testimony we cannot conclude that the trial court erred.

■ The last issue is whether or not the trial court erred in refusing to admit the parol evidence to add terms to the option contract. We believe that it did not err. The option as signed by the parties stated that the land "is to be conveyed free and clear of all encumbrances except for the following reservations, exceptions, and leases, and no others." This means that the seller assumes all encumbrances unless he lists those which the buyer is to assume. Space was provided for the parties to state any encumbrances but it was left blank. At trial LeRoy attempted to persuade the court to consider parol evidence which added terms to explain the agreement he had with Clark concerning the outstanding encumbrances. The trial judge listened to the testimony and later ruled against its admission.

This provides a clear example of the application of the parol-evidence rule. The option agreement was completed by LeRoy's attorney. It contained space to list encumbrances but none was listed. LeRoy cannot now be heard to complain that the option did not contain the entire agreement of the parties. The intention of the parties is clear because of the absence of any statement describing which encumbrances the buyer would assume. The agreement cannot be said to be ambiguous concerning this part.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.