LEWIS H. SHUPE, EXECUTOR OF THE ESTATE OF DORIS HAM SHUPE, APPELLANT, v. A. W. HAM, JR., RESPONDENT.

No. 12324

January 28, 1982 639 P.2d 540

[Rehearing denied May 28, 1982]

*Lionel Sawyer & Collins,* and *Charles McCrea,* Las Vegas, for Appellant.

*Dickerson, Miles, Pico, Mitchell & Wagner,* Las Vegas, for Respondent.

## OPINION

By the Court, McKIBBEN, D. J.:[1]

Appellant Doris Ham Shupe brought suit against the respondent, her former husband, A. W. Ham, Jr., contending that Ham breached his fiduciary duty to Shupe by purchasing real property which he held in trust for her. After a trial before an advisory jury, the district court entered judgment for respondent, which judgment was consistent with the advisory verdicts. This appeal followed.

The parties' twenty year marriage ended in divorce on August 9, 1962. Under a property settlement agreement, appellant received an interest in the following property which is relevant to this action:

> A. One-third of the net profits from the sale or lease of Lots 1-5, Block 19, Clark's Las Vegas Town Site in the City of Las Vegas (hereafter the "Four Queens" property);

---

[1]The Governor designated the Honorable Howard D. McKibben, Judge of the Ninth Judicial District Court, to sit in the place of THE HONORABLE CAMERON M. BATJER. Nev. Const., art. 6, § 4.

B. An undivided one-half interest in Lots 1 and 2, Block 14, Clark's Las Vegas Town Site (hereafter the "California Club" property); and

C. An undivided one-half interest in thirty percent of the proceeds from approximately 70 acres of property located on the corner of Maryland Parkway and Sahara Avenue (hereafter the "Maryland-Sahara" property).

Under the settlement agreement, Ham retained legal title to the above properties.

On December 4, 1962, appellant executed a general power of attorney appointing respondent as her attorney-in-fact and granting him broad powers over her properties. This power of attorney was revoked June 14, 1973. On January 1, 1963, appellant executed a private trust agreement into which the above described properties and others were placed. Respondent was named as sole trustee of the trust. The present dispute involves two transactions between Shupe and Ham. The first occurred on December 4, 1962, when Ham purchased Shupe's interest in the Four Queens property for $5,000.00, and an agreement to serve as trustee under the January 1, 1963, trust without compensation. The second transaction occurred on August 12, 1969, when Shupe entered into a lease option agreement with Ham on the California Club and Maryland-Sahara properties. The lease was for a term of 99 years with rental of $7,500.00 per month and an option to purchase Shupe's interest for $1,000,000.00. In June 1973, Ham executed a trust for the benefit of his children into which he conveyed his interest in the California Club and Maryland-Sahara properties. During July 1973, appellant filed her complaint against respondent to set aside the conveyance of the Four Queens property. Appellant amended her complaint on July 12, 1974, and sought to set aside the lease option agreement on the California Club and Maryland-Sahara properties. That portion of the complaint relating to the lease option agreement was dismissed in November 1975 for failure to join indispensable parties (the parties' children, who were beneficiaries under the Ham trust). Thereafter, on March 16, 1976, in a separate action, appellant filed a cross-claim against Ham seeking money damages arising from the lease option agreement. On November 22, 1976, appellant's amended complaint and cross-claim were consolidated for trial. On February 16, 1977, the district court granted summary judgment in favor of Ham on his counter-motion for partial summary judgment and against Shupe on her claim that she was entitled to receive either rental or interest on the California Club and Maryland-Sahara properties under the terms of the

lease option agreement between the time Ham exercised his right to purchase the property and the time Shupe tendered the deed to the property to Ham.

The district court found that appellant's complaint and cross-claim were barred by the statute of limitations. That finding is supported by substantial evidence and is dispositive of the principal issues on appeal.

A breach of fiduciary duty is a fraud giving rise to the application of the three year statute of limitations. NRS 11.190(3)(d).[2]

Respondent cites Davidson v. Streeter, 68 Nev. 427, 234 P.2d 793 (1951), and Levy v. Ryland, 32 Nev. 460, 109 P. 905 (1910) for the proposition that the statute of limitations does not commence running until the trust is expressly and unequivocally terminated by the trustee. Both *Davidson* and *Levy* are inapposite as they involved resulting trusts. In those cases, the trustee held the property at all times for the benefit of the beneficiary, consistent with the trust and the intendments of the parties. Here, as distinguished from *Davidson* and *Levy,* the fiduciary (Ham) acquired title to the trust property from his beneficiary (Shupe) with her knowledge and consent and for consideration.[3]

In 1962 and in 1969, Ham acquired his interest in the properties under documents which were signed by Shupe. The conveyance of the Four Queens property and the execution of the lease option agreement on the California Club and Maryland-Sahara properties by Shupe were inconsistent with the continuation of any trust and terminated any trust as to the property conveyed. Nevertheless, appellant argues that the statute of limitations does not commence running until appellant learned

---

[2]NRS 11.190 provides in pertinent part:

Actions other than those for the recovery of real property, unless further limited by NRS 11.205 or by or pursuant to the Uniform Commercial Code, can only be commenced as follows:

. . .

3. Within 3 years:

. . .

(d) An action for relief on the ground of fraud or mistake; the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of facts constituting the fraud or mistake.

[3]Appellant was represented by independent counsel different from her present counsel during all of the transactions in question.

of any breach of trust by Ham. However, the district court correctly held that the statute of limitations began to run when the appellant knew or reasonably should have known facts giving rise to respondent's alleged breach of fiduciary duty. This is consistent with this court's holdings in Millspaugh v. Millspaugh, 96 Nev. 446, 611 P.2d 201 (1980), and Allen v. Webb, 87 Nev. 261, 485 P.2d 677 (1971); *see also* Hobart v. Hobart Estate Co., 159 P.2d 958 (Cal. 1945).

On the issue of knowledge, the trial court, with an advisory jury, heard the conflicting evidence and made its findings and determination that the appellant had knowledge or that a reasonable person should have had knowledge of any alleged fraud of respondent in connection with respondent Ham's interest in and the value of the Four Queens property no later than January 1, 1966, and on August 12, 1969, as to the California Club and Maryland-Sahara properties. Where there is substantial evidence to support the trial court's rulings, even if there is a conflict in the evidence, the trial court's conclusions will not be disturbed on appeal. Alrich v. Bailey, 97 Nev. 342, 630 P.2d 262 (1981); Blanchard v. Nevada State Welfare Dep't, 91 Nev. 749, 542 P.2d 737 (1975); Sala & Ruthe Realty, Inc. v. Deneen, 89 Nev. 98, 507 P.2d 140 (1973). Here, the record reflects that during or prior to 1965, Shupe told one of her children that Ham was the landlord of the Four Queens property. At that time, she had sufficient knowledge to know that Ham was collecting rent on the property and that she would have been entitled to one-third of that rent if she had not conveyed the Four Queens property to Ham on December 4, 1962. However, she waited for almost eight years, until July 17, 1973, to file her lawsuit. The evidence also shows that Shupe did not enter into the lease option agreement on the California Club and Maryland-Sahara properties until after she had been advised by Ham that even though the California Club property was in bankruptcy she should retain her interest in the property and until after she had received independent legal advice from the attorney who represented her at that time and independent business advice from a banker. Therefore, the evidence supports the conclusion of the trial court that Shupe, on August 12, 1969, had sufficient facts to cause a reasonable person to inquire, and, in fact, she did inquire, as to the fairness of the lease option agreement and was satisfied that it was in her best interest to enter into the lease option agreement at that time.

The trial record contains substantial evidence to support the findings of the trier of fact that the three year statute of limitations had run as to both properties prior to commencement of suit and those findings will not be disturbed on appeal.

The final issue raised in this appeal to be considered is whether the appellant is entitled to receive either rental or interest on the California Club and Maryland-Sahara properties under the terms of the lease option agreement between the time Ham attempted to exercise the option to purchase the property and the date Shupe tendered the deed to the property to him. On April 1, 1974, Ham notified Shupe of his intention to exercise the option on the California Club and Maryland-Sahara properties. Shupe refused the tender because her suit to rescind the contract on the subject property was pending. On February 24, 1975, Shupe quit-claimed her interest in the properties to Ham and accepted the tender of $1,000,000.00. Shupe first contends that she is entitled to the rental payments on the property under the terms of the lease agreement for that period of time. While the courts are not in harmony on this issue, a majority of the courts hold that upon exercise of the option, the landlord-tenant relationship is terminated and the tenant is in possession as vendee. These courts do not allow the lessor to recover rent after the option to purchase is exercised absent an express provision therefor. United States v. Bethlehem Steel Company, 215 F.Supp. 62 (D.Md. 1962); Cities Service Oil Co. v. Viering, 89 N.E.2d 392 (Ill. 1949); Moore v. Maes, 52 S.E.2d 204 (S.C. 1949). Further, in Summa Corp. v. Richardson, 93 Nev. 228, 564 P.2d 181 (1977), this court stated:

> Upon the exercise of the option, the landlord-tenant relationship of the parties was converted to that of vendor-vendee. 1 American Law Property, § 3.84 at 363 (1952). After exercise, respondents can not avail themselves of breaches of covenants in the lease to work a forfeiture of the option. (Citations omitted.) *Id.* at 235, 564 P.2d at 185.

Therefore, we conclude that Shupe was not entitled to receive rent between the time Ham tendered the $1,000,000.00 to exercise the option to purchase (April 1, 1974) and the time Shupe executed the deed to the property (February 24, 1975).

Alternatively, Shupe asserts that she is entitled to interest payments on the purchase money. The authorities are also divided on this issue. One view is that the purchaser in possession is liable for interest on the purchase price from the date it is due even though the contract is not completed at the time fixed for completion and even though the delay is caused by the seller. *See* Tri State Mall Associates v. A.A.R. Realty Corp., 298 A.2d 368 (Del.Ch. 1972); Wilcox v. Commonwealth Realty

& Trust Co., 227 N.W. 678 (Mich. 1929); Sladkin v. Greene, 59 A.2d 105 (Pa. 1948); Kubnick v. Bohne, 202 N.W.2d 400 (Wis. 1972). Other courts disallow interest if a purchaser made a tender sufficient to entitle him to specific performance, Brewster Cooperative Grow. v. Brewster Orch. Corp., 150 P.2d 847 (Wash. 1944), or where the seller was able to perform but wilfully refused to do so. Wood v. Howland, 101 N.W. 756 (Iowa 1904).

Respondent was in possession of the property during the period in question. Respondent paid no rent on the property and had the full use of the option money during that period. It is inequitable to allow the purchaser the beneficial enjoyment of the property and the use of the purchase money to the detriment of the vendor absent a more compelling equity than exists in this case.

Accordingly, the judgment of the district court is affirmed except that the order of the district court granting summary judgment to respondent on the issue of interest on the purchase money is reversed.

Therefore, this matter is remanded to the district court with instructions to enter an order setting aside the summary judgment on respondent's counter-motion for partial summary judgment on the issue of interest payments and for further proceedings in the district court to conclude the matter relative to the payment of interest consistent with this opinion.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., concur.