**LeRoy H. SCHWARTING and Marie Schwarting, Plaintiffs, Appellees and Cross-Appellants,**

v.

**LaDonna SCHWARTING (now LaDonna Olson), Defendant, Appellant and Cross-Appellee.**

**Civ. No. 10610.**

Supreme Court of North Dakota.

Aug. 30, 1984.

Chapman & Chapman, Bismarck, for plaintiffs, appellees and cross-appellants; argued by Daniel J. Chapman, Bismarck.

Rausch & Rausch, Bismarck, for defendant, appellant and cross-appellee; argued by Richard P. Rausch, Bismarck.

GIERKE, Justice (On Reassignment).

LeRoy and Marie Schwarting, the unsuccessful litigants in *Schwarting v. Schwarting,* 310 N.W.2d 738 (N.D.1981), brought an action against LaDonna Schwarting for the fair rental value of the land at issue in the prior proceeding which LaDonna occupied during 1981 while that case was pending appeal. In *Schwarting,* we upheld a district court judgment ordering LeRoy and Marie to specifically perform under an option contract and convey the property to LaDonna. The trial court in the instant case refused to award LeRoy and Marie the rental value of the property, but awarded them interest on the purchase price from February 1, 1981, to January 6, 1982, the date the purchase price was paid and the deed issued. The trial court also determined that LeRoy and Marie were entitled to be reimbursed $800 for the 1981 taxes they paid on the land. Judgment was entered for $5,459.15, and LaDonna has appealed. LeRoy and Marie have cross-appealed claiming that they should be award-

ed the fair rental value of the land. We affirm the judgment.

On February 3, 1980, LaDonna and her husband Clark entered into a 12-month option contract for the purchase of approximately 470 acres of land owned by Clark's parents, LeRoy and Marie. The option contract listed the purchase price as $70,500 and provided that "the purchase price shall be paid at the time of recording such deed." After Clark died, LaDonna exercised the option by sending LeRoy and Marie a "Notice of Acceptance of Offer to Sell Under Option" on June 12, 1980. LeRoy and Marie rejected LaDonna's notice of acceptance and refused to convey the property because they believed the option could have been exercised only by Clark and only then if he had received a loan from the Farmers Home Administration. LaDonna had received a loan commitment in 1980 from the Federal Land Bank, and was ready, willing, and able to pay the purchase price.

In late 1980, LaDonna brought suit for specific performance. The district court granted specific performance in a judgment dated February 3, 1981, and this Court affirmed on October 5, 1981.

Although LaDonna had entered into a lease agreement with LeRoy and Marie for the farming season of 1980, no lease was executed for 1981. LaDonna remained in possession of the land while the prior case was pending appeal. She rented out the land for $8,800 for the farming season of 1981, but LeRoy and Marie paid the taxes on the land. LeRoy and Marie subsequently brought this action seeking $8,000.

■ Before reaching the merits, we first address LaDonna's contention that LeRoy and Marie's claim for rent is barred because it should have been pleaded as a compulsory counterclaim in the prior proceeding. This assertion is without merit. Rule 13(a), N.D.R.Civ.P., provides in part that "[a] pleading shall state as a counterclaim any claim *which at the time of serving the pleading the pleader has against any opposing party, . . .*" [Emphasis added.] A party is not required to assert a counterclaim that has not matured at the time he serves his pleading. 6 C. Wright and A. Miller, *Federal Practice and Procedure:* Civil § 1411 (1971). The prior proceeding was commenced in 1980. The present action seeks rent for use of the land in 1981. This claim had not matured at the time LeRoy and Marie served their answer in the prior proceeding.

■ The trial court, in reaching its decision, stated that it was treating this case as an "equitable matter." Where a trial court exercises its discretion after weighing the equities of the case, we will not interfere in the absence of a showing that its discretion was abused. *Zimmerman v. Campbell*, 245 N.W.2d 469, 471 (N.D.1976). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Fleck v. Fleck*, 337 N.W.2d 786, 789 (N.D.1983). However, equity follows the letter and the spirit of the law and courts of equity are bound by and must follow and apply the principles of substantive law. *Langenes v. Bullinger*, 328 N.W.2d 241, 246 (N.D.1982).

■ The trial court in this case correctly refused to award LeRoy and Marie the rental value of the property during 1981. Once an option to purchase is exercised, the relationship of landlord and tenant is terminated and the relationship between the parties becomes that of vendor and vendee, and the lessor is no longer entitled to rent in the absence of an express stipulation so providing. *Amann v. Frederick*, 257 N.W.2d 436, 441 (N.D.1977). In *Amann, supra*, this Court stated:

"When the optionee exercises his option, he then becomes the owner of the real estate. As the owner of the real estate, he is entitled to collect the rents on the property. If he still had an obligation to pay rent, it would be an obligation to pay the rent to himself, which would certainly seem to be a superfluous action."

■ We recognize that *Amann* does not stand for the proposition that when an optionee exercises an option which specifies

no time for payment, he becomes absolute owner of the property without making a payment within a reasonable time. *Alumni Ass'n of University of North Dakota v. Hart Agency, Inc.,* 283 N.W.2d 119, 123 (N.D.1979). However, we do not believe that LaDonna's failure to pay the purchase price until 1982, after completion of the prior litigation, deprives her of her right to the rent received on the land in 1981. LaDonna had a loan commitment and was ready, willing and able to pay the purchase price in 1980. LeRoy testified that he would not have accepted the money from LaDonna if she had formally tendered it in 1980. The law does not require a party to a contract to perform vain and futile acts when there has been a refusal in advance to comply with the terms of the agreement. *Fargo Public Library v. City of Fargo Urban Renewal Agency,* 185 N.W.2d 500, 505 (N.D.1971); § 9–12–17, N.D.C.C. Under these circumstances, LeRoy and Marie are not entitled to any rent.

The more difficult question is whether or not LeRoy and Marie are entitled to interest on the purchase price from February 1, 1981, the approximate date of the district court's judgment ordering specific performance in the prior proceeding, to January 6, 1982, when the purchase price was paid and the deed issued.

Although no North Dakota case is precisely in point, this Court, in *Nasset v. Houska,* 48 N.D. 668, 186 N.W. 255 (1921), recognized that a vendee who has had the use and benefit of land since his purchase of it may be required to pay to the vendor interest on the balance of the purchase price remaining unpaid since the date of the sale even though payment in full was not required until delivery of the warranty deed. In *Nasset,* however, it appears that the delay in closing the sale was caused by neither party.

The rule followed in a number of jurisdictions appears to be that where a vendee in possession exercises an option to purchase, and the vendor thereafter refuses to convey the property, the vendee is nevertheless required to pay interest on the unpaid portion of the purchase price even though the delay in the execution of the contract arises by the fault of the vendor. *See generally* Annot., 25 A.L.R.2d 951 (1952 and Later Case Service); Annot., 75 A.L.R. 316 (1931). The theory underlying this rule is that a purchaser should not be able to enjoy the use and profits of the land as well as the balance due on the purchase price without paying interest on the balance. Annot., 25 A.L.R.2d 951, *supra;* Annot., 75 A.L.R. 316, *supra.*

In *Volk v. Atlantic Acceptance & Realty Co.,* 142 N.J.Eq. 67, 73, 59 A.2d 387, 392 (1948), the court stated:

" 'Where, pending the execution of an agreement for the sale of land which does not provide for possession of the land, the vendee takes possession of the land, a court of equity ordinarily will charge interest upon the unpaid purchase money. This is true although there is delay in the execution of the contract of sale by the vendor. In equity the vendor is ordinarily entitled to interest where the purchaser is let into possession and no provision is made in the contract for a delay in its execution, although the failure to complete the contract is due to the fault of the vendor, and in such a case in decreeing specific performance the purchaser is as a general rule to be charged with interest on the purchase money from the time it should have been paid if the contract had been carried out as contemplated by the parties, it being deemed inequitable that the purchaser should enjoy the benefit of the possession without liability for interest.' 55 Am.Jur. 774, § 347."

\* \* \* \* \* \*

"And so, in the absence of some incompatible equity, it seems to be the predominant weight of judicial opinion in courts of equitable jurisdiction that in the ordinary case to accord the purchaser the *beneficial* enjoyment of the possession of the property without liability for any in-

terest on the retained purchase money, is inequitable." [Emphasis in original.] [1]

*See, e.g., Dillingham Commercial Co., Inc. v. Spears,* 641 P.2d 1 (Alaska 1982); *Shupe v. Ham,* 98 Nev. 61, 639 P.2d 540 (1982); *Estreen v. Bluhm,* 79 Wis.2d 142, 255 N.W.2d 473 (1977).

■ Having carefully reviewed the record in this case, we cannot say that the circumstances are so inequitable as to prohibit the payment of interest to LeRoy and Marie. We further note that the trial court ordered the payment of interest at the legal rate of six percent, which is, in all probability, approximately one-half of what LaDonna would have had to pay to a commercial lender. Under these circumstances, the trial court did not abuse its discretion in awarding LeRoy and Marie interest on the purchase price.

■ We also agree with the trial court's conclusion that LeRoy and Marie are entitled to be reimbursed $800 for the 1981 taxes they paid on the land while the prior case was pending appeal. A court of equity may properly allow the record owner of disputed property reimbursement of taxes he paid on the land from the party who by court decree is determined to have been the rightful owner. *Wilson v. Polsfut,* 78 N.D. 204, 210, 49 N.W.2d 102, 106 (1951). *See also United Accounts, Incorporated v. Larson,* 121 N.W.2d 628, 634 (N.D.1963).

■ LaDonna asserts that the trial court erred in awarding interest and reimbursement for taxes because LeRoy and Marie, in their amended complaint, demanded only "a fair amount for cash rental upon said property ...." We disagree. Rule 8(f), N.D.R.Civ.P., provides that "[a]ll pleadings shall be so construed as to do substantial justice." Furthermore, Rule 54(c), N.D.R.Civ.P., provides that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." In view of our liberal pleading rules and the fact that the trial court treated this case as an equitable matter, we conclude that the trial court did not err in the type of relief awarded.

■ LaDonna also asserts that she has been "deprived of due process." This is the extent of her argument. Suffice it to say that her allegation is not sufficient to raise a constitutional issue. *E.g., Jones v. North Dakota Workmen's Comp. Bureau,* 334 N.W.2d 188, 192 (N.D.1983).

For the reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

PEDERSON, Justice, dissenting in part.

By requiring LaDonna to pay interest on the purchase price from the date LeRoy and Marie would have been entitled to receive the purchase price has the effect of making time "of the essence" for LaDonna but not for LeRoy and Marie.

---

1. In *New Jersey Highway Authority v. Renner,* 32 N.J.Super. 197, 201–202, 108 A.2d 107, 109 (1954), the Superior Court of New Jersey distinguished *Volk* and disallowed interest in a case where under the terms of the contract "the purchase money was not due until 30 days after the delivery of the deed, and Mrs. Renner never tendered the deed until after judgment," and where her attorney stipulated that "it was folly to contest the issue of specific performance." We do not believe that the *Renner* decision renders *Volk* inapplicable to the facts of this case.

Although the option contract in this case provided that "the purchase price shall be paid at the time of recording such deed," this provision in itself should not bar the award of interest. It is true that the terms of a sales agreement may operate in some cases to prevent a vendor from receiving interest on the purchase price. *See* Annot., 75 A.L.R., *supra,* at 343–345. However, where the vendee is already in possession of the property, we assume it would be common that delivery or recording of the deed would trigger payment. As noted earlier herein, the general rule pertains to vendees already in possession, as in the instant case.

Furthermore, *Renner* is distinguishable from the instant case because we cannot say that it was "folly" or "frivolous" for LeRoy and Marie to contest the issue of specific performance in the prior proceeding.

In my view equity lies with LaDonna, who did not default. If there are other matters that shift the balance of the equities to LeRoy and Marie, the trial court should have pointed them out to us in findings of fact. Because it did not do that, the trial court's decision is, on its face, an "abuse of discretion."

Under the majority opinion vendors will be encouraged to use the courts to search for a way out when they make a bad bargain or merely have a change of heart because, even if they lose the challenge, they still get the agreed purchase price plus interest.

The fact that LaDonna was in possession and allowed to retain the profits is not an item of equity for or against her—if she had not been in possession she would have been entitled to an accounting. As this court concluded in *Pillsbury v. J.B. Streeter, Jr., Co.*, 15 N.D. 174, 182, 107 N.W. 40, 43 (1906):

> "The object to be aimed at by courts of equity ... is to place the party *without fault* as nearly as possible in the same condition as he would have been in had there been no default by the other party." [Emphasis added.]

Placing the party *with fault* as nearly as possible in the same condition as he would have been in had there been no default rewards fault. That is not equity even if you call it a "rule." "No one can take advantage of his own wrong." Section 31–11–05(8), NDCC.

I do not agree with the majority opinion characterizing *Nasset v. Houska*, 48 N.D. 668, 186 N.W. 255 (1922) as a case where "the delay in closing the sale was caused by neither party." That case indicates to me that the buyer (Martin) tendered less than the balance due. That is a default and the requirement that he pay interest was, of course, equitable.

The judgment should be reversed, at least for findings of fact on the question of balancing equities. If there are no equities favoring the defaulting seller, he is entitled to exactly what his contract calls for and no more.

SAND, Justice (dissenting in part).

I agree that the case presents some difficult equitable principles, but I nevertheless do not agree with the allowance of interest as set out in the majority opinion. In this respect I concur generally in the equitable principles stated in the opinion of Justice Pederson.

After reviewing the annotation in 25 A.L. R.2d 951 (1952 and Later Case Service), Annot. 75 A.L.R. 316 (1931), I am satisfied that the rule attributed to the annotations stated above is too broad and does not reflect the case law cited. Case law set out in the above annotation does not stand for the proposition that the vendee in possession is required to pay interest on the purchase price even if the vendor *refuses* or declines to convey the property. Neither is this concept supported by North Dakota case law. *Nasset v. Houska*, 48 N.D. 668, 186 N.W. 255 (1921) and *Pillsbury v. J.B. Streeter, Jr., Co.*, 15 N.D. 174, 182, 107 N.W. 40 (1906).

Mere possession is not controlling in determining whether or not the vendor is entitled to interest on the unpaid purchase price. Immediate possession, time of payment, including performance by vendor, triggering payment are all matters that may have influenced the purchase price. In this case the agreement made no reference to interest. Courts have held that the award of interest in some circumstances is in the nature of a penalty for wrongful detention of property. *Texas Company v. Crown Petroleum Corporation*, 137 Conn. 217, 75 A.2d 499 (1950); *Bryant v. Jones*, 255 Ky. 606, 75 S.W.2d 34 (1934); and *Douglass v. Ransom*, 205 Wis. 439, 237 N.W. 260 (1931). See *Lund v. Larsen*, 222 Minn. 438, 24 N.W.2d 827 (1946).

92 C.J.S. *Vendor and Purchaser* § 260, p. 128, states:

> "Generally, unless there is a statute providing otherwise, when the contract makes no provisions as to interest, none commences to run or is payable before

the purchase money has become due and the purchaser has made made default."

Similarly, 77 Am.Jur.2d *Vendor and Purchaser*, § 310, p. 468 states:

"Unless it is otherwise stipulated in the contract, the unpaid purchase money does not draw interest before the stipulated time for its payment although the purchaser is given possession."

This has full application to the instant matter. Significantly, footnote 12 of this article makes reference to Annot., 75 A.L.R. 345 and 25 A.L.R.2d 965, referred to earlier herein.

In addition, this case is readily distinguishable from the cases relied upon to allow the vendor to collect interest on the unpaid purchase price. This is not a case where the vendor's passive failure to perform an act which would have triggered payment of the purchase price, but rather is a situation where the vendor actively sought to dispossess the vendee and to have the agreement nullified. As a result the vendee was put through a costly lawsuit and an appeal, all because the vendor declined to abide by the agreement. In my opinion, the vendor should not be allowed to have it both ways.

He who seeks equity must do equity and must come into court with clean hands. *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974). Equity follows the law not only in its letter, but its spirit. *Id.* In my opinion, the vendor in this instance does not meet those basic requirements.

To give meaningful equity under the circumstances of this case to the parties the vendor should be entitled to interest, if any, but only from and after entry of judgment on remand in *Schwarting v. Schwarting*, 310 N.W.2d 738 (N.D.1981). Any interest allowed prior to that date would, in effect, reward the person for refusing to comply with an agreement. The vendor in this case cannot have it both ways. As Justice Pederson points out, under the majority opinion the vendor will be encouraged to use and resort to the courts in an attempt to get out of what the vendor considers a "bad bargain." In this case the vendee was ready, willing and able to pay the purchase price but the vendor never made the required delivery or an equivalent recording. In addition, the vendor testified that if payment had been tendered it would not be accepted. The actions of the vendor, in effect, prevented the payment.

In my opinion, the judgment on remand in *Schwarting, supra,* can be considered the equivalent of recording the deed for purposes of providing a marketable title and the vendor would be entitled to interest from that date. Accordingly, the judgment should be reversed and the case remanded with directions that interest be awarded but only from and after the entry of judgment on remand in the first case.